773 F.2d 19
 Berill G. GOODKIN and Phyllis Goodkin, Plaintiffs,
v.
UNITED STATES of America, the State of New York, the City of
New York, William G. Reichert, John O'Connor,
Jules Aaron and Carol Aaron, Defendants,
United States of America, Defendant-Appellee,
The City of New York, Defendant-Appellant,
UNITED STATES of America, Defendant and Third-Party Plaintiff,
v.
STATE OF NEW YORK, Third-Party Defendant.
 No. 85-6064.
 United States Court of Appeals,
Second Circuit.
 Argued June 5, 1985.
Decided Aug. 26, 1985.
 
 Leonard A. Mentzer, Office of the Corporation Counsel, City of New York, New York City, (Frederick A.O. Schwarz, Jr., Corporation Counsel of the City of New York, Leonard Koerner, Stephen J. McGrath, New York City, of counsel), for appellant.
 Patrick B. Northup, Asst. U.S. Atty., E.D. of N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty. for the E.D. of N.Y., Robert L. Begleiter, Asst. U.S. Atty., E.D. of N.Y., Brooklyn, N.Y., of counsel), for appellee.
 Before FEINBERG, Chief Judge, and MESKILL and NEWMAN, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This appeal presents a single question: whether New York's Comprehensive Motor Vehicle Insurance Reparations Act (no-fault law or Act), N.Y.Ins.Law Sec. 5101 et seq. (McKinney 1985), precludes recovery on a cross-claim brought by a defendant whom the Act deems to be a noncovered person against a co-defendant whom the Act deems to be a covered person seeking contribution for basic economic loss damages. In light of New York's strong policy favoring apportionment of damages among tortfeasors on the basis of relative culpability and given the legislature's failure to address the contribution issue in the Act, we conclude that the no-fault law did not extinguish the right of noncovered persons to seek contribution from covered joint tortfeasors. Accordingly, we reverse that part of the judgment entered in the United States District Court for the Eastern District of New York, Wexler, J., 600 F.Supp. 1459, denying the cross-claim brought by the City of New York (City) against the United States for the latter's equitable share of plaintiffs' basic economic loss. We remand to the district court for entry of judgment in favor of the City on its cross-claim.
 
 BACKGROUND
 
 2
 This litigation arose from an automobile accident that occurred on a municipally owned highway in Brooklyn, New York in December 1977. The facts are undisputed. An automobile owned by the United States and driven by a federal employee crossed the median divider of the Belt Highway and collided with plaintiffs Goodkins' vehicle. Plaintiffs sued, among others, the United States and the City. Federal jurisdiction was premised on the Federal Tort Claims Act, 28 U.S.C. Secs. 1346 & 2671 et seq. (1982); the claim against the City was pendent to the federal claim. All of the claims were governed by state law. See Mandelbaum v. United States, 251 F.2d 748, 750 (2d Cir.1958); 28 U.S.C. Secs. 1346(b) & 2674.
 
 
 3
 At the trial on liability, the jury found only the City and the United States liable. The jury apportioned seventy percent of the liability to the City for its negligence in maintaining the highway and thirty percent to the United States. The jury's verdict, which was only advisory as to the United States, see 28 U.S.C. Sec. 2402 (1982), was adopted in toto by the district court. At the subsequent trial on damages, the jury determined plaintiffs' total damages to be $500,000. The district court adopted the jury's award as to the United States. By special findings, the court determined that $49,067 and $15,473 of the general award were attributable, respectively, to plaintiff Berill Goodkin's and plaintiff Phyllis Goodkin's basic economic loss as defined by the no-fault law, N.Y.Ins.Law Sec. 5102. The district court correctly acknowledged that the no-fault law precluded covered persons, such as plaintiffs, from recovering basic economic loss from other covered persons, such as the United States. It therefore concluded that the City, a noncovered person, should likewise be unable to recover in an action for contribution against the United States for amounts attributable to plaintiffs' basic economic loss.
 
 DISCUSSION
 A. New York's No-Fault Scheme
 
 4
 No-fault laws were created to remedy a long recognized and serious problem--the inability of the tort system to rapidly, adequately and fairly compensate victims of automobile accidents. 12A Couch on Insurance 2d Sec. 45:661 (rev. ed. 1981). In Montgomery v. Daniels, 38 N.Y.2d 41, 378 N.Y.S.2d 1, 340 N.E.2d 444 (1975), upholding the constitutionality of New York's no-fault law, the New York Court of Appeals enumerated three particular problems that the legislature intended the Act to address: (1) the excessive and needless expense of the tort system; (2) the unfair and inequitable distribution of compensation among accident victims, including long delays in payment, and (3) the strain placed on the state judicial system by tort litigation. Id. at 50-51, 378 N.Y.S.2d at 8-9. The Act sought to remedy these problems by, inter alia, removing minor claims from the courts, eliminating fault as a required predicate for recovering certain losses from a predicate determination of liability based on fault, requiring payments to be made immediately on accrual of loss and requiring all owners of motor vehicles to carry no-fault insurance. The preeminent purpose of the no-fault law, according to the Court of Appeals, was "to assure the prompt and full reimbursement of the 'economic' losses those injured in automobile accidents may suffer." Perkins v. Merchants Mutual Insurance Co., 41 N.Y.2d 394, 396, 393 N.Y.S.2d 347, 348, 361 N.E.2d 997, 998 (1977).
 
 New York's no-fault legislation
 
 5
 provides a plan for compensating victims of automobile accidents without regard to fault. In essence, it is a two-pronged, partial modification of the preexisting system of reparation for personal injuries suffered in automobile accidents under which system liability was grounded in negligence under classic principles of tort law. One prong deals with compensation; the other with limitation of tort actions.
 
 
 6
 Montgomery, 38 N.Y.2d at 46, 378 N.Y.S.2d at 4, 340 N.E.2d at 446. The Act partially but not completely eliminated the rights of automobile accident victims to recover in tort for their injuries. It replaced what it excised with a relatively simple and straightforward compensation system designed to quickly reimburse injured parties, up to certain limits, for the common, out-of-pocket expenses generated by their injuries.
 
 
 7
 A general overview of the statutory particulars provides a useful foundation for our evaluation of the question presented. Under the Act, every owner of a motor vehicle is responsible, regardless of fault, to a specified class of persons for any and all basic economic loss resulting from injuries occasioned by the use or operation of that vehicle. The class of persons includes the owner himself, operators and occupants of his vehicle and pedestrians. By definition, basic economic loss is limited to an aggregate maximum of $50,000 per person and includes the cost of professional health services ascertainable within one year, lost earnings and the cost of substitute services up to $1,000 per month for not more than three years and other expenses up to $25 per day for not more than one year. N.Y.Ins.Law Sec. 5102(a). Reimbursement for basic economic loss minus certain specified deductions constitutes first party benefits, id. Sec. 5102(b), which are due and payable when the loss is incurred.
 
 
 8
 The Act imposes two limitations on recovery for personal injuries. By their terms, these limitations apply only to actions between covered persons: "[n]otwithstanding any other law," a covered person cannot recover against another covered person for basic economic loss, and a covered person who has not sustained serious injury as defined in section 5102(d)[1] cannot recover against another covered person for non-economic loss. Id. Sec. 5104. Non-economic loss is "pain and suffering and similar non-monetary detriment." Id. Sec. 5102(c).
 
 
 9
 A covered person as defined by the Act is "any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle which has in effect the financial security required ... or which [is among the exceptions in N.Y.Veh. & Traf.Law Sec. 321 (McKinney Supp.1984), which includes vehicles owned by the United States] or any other person entitled to first party benefits." N.Y.Ins.Law Sec. 5102(j). With certain exceptions, the motor vehicle owner's liability carrier must pay first party benefits to any person, "other than occupants of another motor vehicle or a motorcycle," whose injury arises out of the use or operation of the owner's vehicle. Id. at Sec. 5103(a)(1). It must also pay first party benefits to "[t]he named insured and members of his household, other than occupants of a motorcycle," for injuries arising from the use or operation of any insured vehicle outside of New York but in the United States or Canada or any uninsured vehicle in the United States or Canada. Id. Sec. 5103(a)(2). Finally, it must pay first party benefits to any New York resident not otherwise entitled to such benefits whose injury results from the use or operation of the owner's vehicle outside of New York but in the United States or Canada. Id. Sec. 5103(a)(3). Everyone not entitled to first party benefits is a noncovered person.
 
 
 10
 Intended to address only minor personal injury claims, the no-fault law leaves unaffected the right to recover in tort for economic loss in excess of the basic economic loss limitations and the right to recover for non-economic loss associated with serious injury. The Act by its terms and operation simply eliminates the right of an injured covered person to recover in tort against another covered person for basic economic loss. In most instances, of course, the practical result of this is that covered defendants will not be liable for any amounts attributable to basic economic loss.
 
 
 11
 The Act affects the right of a covered person to recover in tort against a noncovered person only to the extent that it imposes a statutory lien in favor of the insurance carrier on any recovery attributable to basic economic loss for which the carrier has already reimbursed the plaintiff. Id. Sec. 5104(b). The Act does not refer at all to the rights of noncovered persons against covered persons. Specifically, the Act contains no language to indicate its intended effect, if any, on the right of a noncovered party to claim contribution against a covered person.
 
 B. New York's Law of Contribution
 
 12
 The law of contribution in New York has both common law, Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), and statutory, N.Y.Civ.Prac.Law Sec. 1401 et seq. (McKinney 1976), roots. The now established rule that contribution is apportioned according to the relative culpability of each tortfeasor was first articulated in Dole v. Dow Chemical, 30 N.Y.2d at 153, 331 N.Y.S.2d at 391-92, 282 N.E.2d at 294-95. The holding in that case was subsequently codified:
 
 
 13
 The amount of contribution to which a person is entitled shall be the excess paid by him over and above his equitable share of the judgment recovered by the injured party; but no person shall be required to contribute an amount greater than his equitable share. The equitable shares shall be determined in accordance with the relative culpability of each person liable for contribution.
 
 
 14
 N.Y.Civ.Prac.Law Sec. 1402.
 
 
 15
 New York law embodies a marked preference for contribution and a decided disinclination to limit a defendant's right to recover contribution from a joint tortfeasor. E.g., Garrett v. Holiday Inns, Inc., 58 N.Y.2d 253, 258-59, 460 N.Y.S.2d 774, 777, 447 N.E.2d 717, 720 (1983); see also Gregory v. Garrett Corp., 578 F.Supp. 871, 879 (S.D.N.Y.1983); Quintel Corp. v. Citibank, N.A., 100 F.R.D. 695, 699 (S.D.N.Y.1983); Lippes v. Atlantic Bank, 69 A.D.2d 127, 135-38, 419 N.Y.S.2d 505, 510-11 (1st Dep't 1979). Furthermore, the law is clear that claims for contribution concern only defendants, and the resolution of the attendant apportionment issues has no effect on the amount of recovery to which a plaintiff is entitled. Klinger v. Dudley, 41 N.Y.2d 362, 367-68, 393 N.Y.S.2d 323, 327-28, 361 N.E.2d 974, 977-78 (1977); Kelly v. Long Island Lighting, 31 N.Y.2d 25, 30, 334 N.Y.S.2d 851, 855, 286 N.E.2d 241, 243 (1972); N.Y.Civ.Prac.Law Sec. 1404(a).
 
 
 16
 C. Contribution and Noncovered Persons Under the No-Fault Law
 
 
 17
 The no-fault law is a statute in derogation of the common law and, thus, must be strictly construed. Maxwell v. State Farm Mutual Automobile Insurance Co., 92 A.D.2d 1049, 1050, 461 N.Y.S.2d 541, 544 (3d Dep't 1983); N.Y.Stat.Law Sec. 301 (McKinney 1971). Although it abrogates certain rights of recovery, the no-fault law does not address either implicitly or explicitly the noncovered defendant's right to contribution. We are, therefore, hesitant to read into the no-fault law a limitation of that right.
 
 
 18
 Moreover, we do not believe that permitting the City to prevail on its cross-claim for contribution for amounts attributable to basic economic loss will in any way compromise the functions or purposes of the no-fault law. The plaintiffs' right to recover basic economic loss from the carrier arose when the loss was incurred. The City's right to actually receive contribution from the United States will not arise until the City has paid an amount exceeding its equitable share of the plaintiffs' basic economic loss. See Klinger v. Dudley, 41 N.Y.2d at 369, 393 N.Y.S.2d at 328-29, 361 N.E.2d 974, 978, 980. The two rights arise at different times and are completely separate--whatever the outcome on the cross-claim, it cannot by law affect the amount of recovery to which plaintiffs are entitled. If the City recovers on its cross-claim, that result will in no way affect the plaintiffs' right under the no-fault law to receive prompt and full reimbursement of their basic economic loss. See Perkins, 41 N.Y.2d at 396, 393 N.Y.S.2d at 348, 361 N.E.2d at 998. Indeed, in this case and others like it, the plaintiffs will have received their first party benefits long before the determination on contribution is made.
 
 
 19
 Furthermore, permitting a right of contribution for basic economic loss will not encourage litigation that the no-fault law would ordinarily discourage. Except for the lien on recoveries, suits against noncovered persons are simply not implicated by the Act. Only in those circumstances where the Act would otherwise permit no recovery against a covered tortfeasor, i.e., where the plaintiff's injuries are not serious and his total damages are less than or equal to basic economic loss, is that covered tortfeasor likely to be involved as a third-party defendant but not as a defendant. Because these circumstances are, for economic reasons, also those least likely to result in litigation, that type of third-party action should be uncommon. Thus, allowing the right of contribution herein sought will not noticeably affect the costs and burdens associated with the tort system.
 
 
 20
 We are not unmindful that permitting contribution in cases like this produces a somewhat anomalous result. Where a covered tortfeasor is 100 percent at fault, he will not be liable for any basic economic loss. Where, however, he is less than 100 percent liable and his joint tortfeasor is a noncovered person, the covered tortfeasor may be liable on a contribution claim for amounts attributable to plaintiff's basic economic loss.
 
 
 21
 Such anomalous results, however, are not uncommon under New York's law of contribution. Emphasizing "the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault," the New York Court of Appeals recently noted that "contribution rights on behalf of concurrent wrongdoers have been upheld in numerous circumstances in which the injured person has himself had no right of recovery against [the] third party." Garrett v. Holiday Inns, 58 N.Y.2d at 258-59, 460 N.Y.S.2d at 777, 447 N.E.2d at 720. In Dole v. Dow Chemical, for example, the court upheld the right of the defendant chemical company to make a third-party claim for contribution against plaintiff's decedent's employer even though the plaintiff was barred from suing the employer by the exclusive remedy provision of the Workmen's Compensation Laws, N.Y.Work.Comp.Law Sec. 11 (McKinney Supp.1984). Dole v. Dow Chemical, 30 N.Y.2d at 152, 331 N.Y.S.2d at 390-91, 282 N.E.2d at 294-95. Similarly, in Klinger v. Dudley, the court upheld claims for contribution against three groups of third-party defendants. 41 N.Y.2d at 365, 393 N.Y.S.2d at 326. The first group could not have been sued directly by the plaintiffs because of the exclusive remedies provisions of the Workmen's Compensation Law, N.Y.Work.Comp.Law Sec. 11 (barring actions against employers) & Sec. 29(6) (barring actions against co-employees) (McKinney Supp.1984). The second group had originally been defendants and had successfully moved to have plaintiffs' complaint against them dismissed. The third group could have been but never were sued directly by the plaintiffs.
 
 
 22
 In light of the New York Court of Appeals' consistent pro-contribution position, we believe that we must reverse the district court. Nonetheless, we should mention two state trial court opinions that were discussed by the district court and exhaustively analyzed by the parties on appeal.
 
 
 23
 In Cole v. Lord, 91 Misc.2d 178, 397 N.Y.S.2d 537 (Sup.Ct.Broome Cty.1977), the court was primarily concerned with the peculiar status of motorcyclists under the no-fault law. Because motorcycles are specifically excluded from the definition of motor vehicle under the Act, motorcycle owners are not required to obtain coverage for no-fault benefits. If a motorcycle is involved in an accident with an automobile, however, the motorcyclist is apparently nevertheless entitled to receive first party benefits from the automobile owner's carrier. Id. at 179, 397 N.Y.S.2d at 538; see also Perkins, 41 N.Y.2d at 395-97, 393 N.Y.S.2d at 348-49, 361 N.E.2d at 997-99.
 
 
 24
 The Cole v. Lord litigation arose from an accident involving a motorcycle and a car. The plaintiff, Cole, a passenger on the motorcycle, sued Cronk, the motorcycle owner/operator, and Lord, the operator of the automobile. The jury apportioned sixty percent of the fault to Lord and forty percent to Cronk and determined both non-economic and economic loss damages. On the theory that both defendants were covered persons, Cole sought judgment for non-economic loss only. Lord contended, however, that Cronk was a noncovered person and, therefore, that a separate judgment for basic economic loss should enter against him. This, of course, would work to the advantage of Lord's carrier who would be entitled to a statutory lien on that judgment for first party benefits it had paid to Cole. The court agreed that Cronk was a noncovered person and that plaintiff could recover against him under the common law. Cole v. Lord, 91 Misc.2d at 182, 397 N.Y.S.2d at 540. But the court also held that Cronk's liability for basic economic loss should be limited to his relative responsibility. Otherwise, the court reasoned, Lord's carrier, by operation of the statutory lien, would be reimbursed for damages flowing from its insured's negligence.
 
 
 25
 The issue of contribution was not raised in Cole v. Lord. Moreover, the result appears contrary to the basic tenet, stated in N.Y.Civ.Prac.Law Sec. 1404(a), that the relative culpability of the defendants shall not affect the amount of the plaintiff's recovery. See Klinger v. Dudley, 41 N.Y.2d at 367-68, 393 N.Y.S.2d at 327-28, 361 N.E.2d at 978-79; Kelly v. Long Island Lighting, 31 N.Y.2d at 30, 334 N.Y.S.2d at 855, 286 N.E.2d at 243. Finally, the inequitable result that the court sought to avoid was made possible by Cronk's failure to cross-claim against Lord for contribution. Therefore, we do not believe that Cole v. Lord has any application to this case.
 
 
 26
 The United States and the court below relied substantially on Seward v. Northrup, 123 Misc.2d 420, 473 N.Y.S.2d 754 (Supp.Ct.Del.Cty.1984). The jury in Seward found defendant Northrup, a covered person, to be sixty-five percent culpable and defendant county and defendant town, both noncovered persons, to be respectively thirty percent and five percent responsible. The noncovered defendants moved to have the economic loss award against them reduced by sixty-five percent. Relying on the rule that the relative fault of defendants may not affect a plaintiff's recovery, the court denied the motion. Id. at 422-23, 473 N.Y.S.2d at 756-57. Our result here is not contrary to the Seward decision. In any event, Seward, like Cole v. Lord, is distinguishable from this case because it did not involve a claim for contribution.
 
 CONCLUSION
 
 27
 Given New York's clearly articulated policy favoring contribution among tortfeasors according to each one's relative culpability, we will not construe the New York no-fault law to abrogate by implication a noncovered person's right to recover against a covered joint tortfeasor on a claim for contribution for amounts attributable to basic economic loss. We do not believe that our result will in any way interfere with the no-fault law's primary purpose of assuring that victims of automobile accidents receive prompt reimbursement for the out-of-pocket expenses associated with their injuries.
 
 
 28
 That part of the judgment of the district court that denied the City's cross-claim against the United States for contribution of the United States' equitable share of plaintiffs' basic economic loss is reversed. The cause is remanded to the district court for entry of judgment on the cross-claim in favor of the City.
 
 
 
 [1]
 Section 5102(d) provides as follows:
 "Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.