**LIBERTY MUTUAL INSURANCE CO., as subrogee of the Estate of Maria Vasquez, Antonio Vasquez, Administrator, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 79 C 2362, X 79 C 1601.

United States District Court, E. D. New York.

May 23, 1980.

Kirk, O'Connell & Cassara, Brooklyn, N. Y., for plaintiff.

E. R. Korman, U. S. Atty., E. D. N. Y., by Robert L. Begleiter, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff, Liberty Mutual Insurance Co. ("Liberty Mutual"), as "subrogee of the Estate of Maria Vasquez", has sued the United States for medical expenses incurred by Ms. Vasquez as the result of an accident allegedly involving a truck owned by the United States Postal Service. The accident assertedly occurred September 15, 1976, in Jamaica, New York, and involved Ms. Vasquez, a pedestrian, and the Postal Service vehicle, which was then being driven by a Postal Service employee acting within the scope of his employment. The gravamen of Liberty Mutual's complaint is that it paid $7212.00 in medical expenses on behalf of Ms. Vasquez, as a member of the household of its insured, one William Gonzalez, which sum it now seeks to recover from the United States pursuant to the Federal Tort

Claims Act, 28 U.S.C. §§ 2671 et seq. (1976), and its jurisdictional counterpart, 28 U.S.C. § 1346(b) (1976).

After filing an answer, the United States has moved pursuant to *Fed.R.Civ.P.* 12(c) for judgment on the pleadings and dismissal of the complaint. By so moving, the United States has temporarily removed the problem of contested issues of fact [1] and has put squarely before this Court the dispositive legal issue in this case, to wit, whether the law of New York, specifically the State's No-Fault Insurance Act, Insurance Law §§ 670 et seq. (McKinney's Cum.Sup.1979), provides an insurer with a cause of action against the United States for the recovery of first-party benefits paid to its insured as a result of the allegedly negligent operation of a vehicle owned by the United States. For the reasons outlined below, we hold that the applicable law precludes such a claim, necessitating the dismissal of Liberty Mutual's complaint.

### I

■ Two threshold questions here are whether the United States may be sued at all for a claim of this sort and if so, what law is to apply. It is well settled that the United States may not be sued without its consent. *See, e. g., Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), *reh. denied*, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 (1972); *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Huntington Towers, Ltd. v. Franklin Nat'l Bank*, 559 F.2d 863 (2d Cir. 1977). Additionally, the United States, acting through congressional enactments, may define the conditions under which it will permit actions against it and waive its immunity. *See, e.*

1. On a 12(c) motion, the movant is deemed to admit his adversary's allegations of fact; the movant's allegations, conversely, are taken as true only if specifically admitted by the adversary. Thus, for this motion only, we must and do assume Liberty Mutual's allegations are true. We do not, however, take the same posi-

tion with respect to its conclusions of law. *See Can-Tex Industries v. Safeco Ins. Co.*, 460 F.Supp. 1022 (W.D.Pa.1978); *Diaz v. Ward*, 437 F.Supp. 678 (S.D.N.Y.1977); 5 Wright & Miller, Federal Practice & Procedure, § 1368 at 692.

g., *Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967).

In 1946, Congress enacted the Federal Tort Claims Act, Title IV, 60 Stat. 812, 842 (1946), which waived the Government's immunity to the extent that it recognized the general principle that the United States shall be liable for the negligence of Government employees acting within the scope of their employment, "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [negligence] occurred." 28 U.S.C. § 1346(b) (1976). Limiting this waiver of immunity is the concomitant mandate that the tort liability of the United States shall be assessed "in the same manner and to the same extent as a private individual under like circumstances . . ." 28 U.S.C. § 2674 (1976).[2]

■ Viewing the facts of this case in light of this limited waiver of immunity, it is apparent that the law to be applied is that of New York—as the alleged negligence occurred here—and the liability of the United States is to be determined as it would be for an individual defendant under the same circumstances. In these circumstances, an individual would face Article 18 of New York's Insurance Law, the Comprehensive Automobile Insurance Reparations Act (the "Act"), added in 1973, popularly known as the "No-Fault" Insurance Act. The Act, intended (1) to render irrelevant an automobile operator's negligence while compensating injured persons, and (2) to reduce the cost of liability insurance, has largely abrogated the common law governing automobile accident liability in New York. *See* N.Y.Const. Art. I, § 14; *Mont-*

*gomery v. Daniels*, 38 N.Y.2d 41, 378 N.Y. S.2d 1, 340 N.E.2d 444 (1975); *Liberty Mutual Ins. Co. v. State*, 94 Misc.2d 676, 405 N.Y.S.2d 945 (Ct.Cl.1978); *Marc-Charles v. Krug*, 93 Misc.2d 603, 403 N.Y.S.2d 658 (Civ. Ct.N.Y.1978). This abrogation was not meant to be wholesale, however, and New York's courts have stressed that the Act's provisions are to be strictly construed. *See, e. g., Hughes v. Nationwide Mutual Ins. Co.*, 98 Misc.2d 667, 414 N.Y.S.2d 493 (Livingston Cty. 1979); *Scarpelli v. Marshall*, 92 Misc.2d 244, 399 N.Y.S.2d 244, 399 N.Y.S.2d 1001 (Nassau Cty. 1977). The Act must be interpreted only as it is expressly written, and the common law is to be changed only to the extent that the "clear import of the statutory language absolutely requires" it. *Abbasi v. Galluzze*, 88 Misc.2d 926, 927, 390 N.Y.S.2d 514, 515 (App.Term, 2d Dept. 1976); *Scarpelli, supra; Cucinella v. Cooper*, 82 Misc.2d 877, 371 N.Y.S.2d 620 (Monroe Cty. 1975).

We are thus mindful of the limited extent to which we may range in applying the Act to the United States. Where the Act, by its express terms, cannot be made pertinent to the United States "in the same manner and to the same extent as [to] a private individual under like circumstances," we must take refuge in the common law. Where the Act does apply, however, we are obligated to follow it.

II

"In essence," the Act is "two-pronged": " . . . [o]ne prong deals with compensation; the other with limitation of tort actions." *Montgomery v. Daniels, supra*, 38 N.Y.2d at 46, 378 N.Y.S.2d at 4.[3] The first

---

**2.** Further limiting the waiver of immunity is the requirement embodied in 28 U.S.C. §§ 2401(b) and 2675 that a party seeking to sue the United States for the negligence of one of its employees must first present his claim to "the appropriate federal agency", which then has six months to act upon the claim. If the agency takes no action within that time, the claimant may consider the claim denied and commence his suit. It is well settled that this prior administrative claim requirement is jurisdictional and cannot be waived. *See, e. g., Smith v. United States*, 588 F.2d 1209 (8th Cir. 1978); *Duc-*

*harme v. Merrill-National Laboratories*, 574 F.2d 1307 (5th Cir.), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 677 (1978); *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th Cir. 1974). Liberty Mutual has complied with this requirement in the instant case. Complaint ¶ 13; Answer ¶ Fourth.

**3.** *Montgomery* is perhaps the leading case by the New York Court of Appeals construing the Act. The Court upheld the Act against a panoply of constitutional challenges, most of them based on the due process and equal protection clauses. Much of the description of the Act

prong requires every owner of a "motor vehicle" (defined to exclude motorcycles and emergency vehicles) to provide for compensation for himself, members of his household, operators, occupants, and pedestrians for "basis economic loss" resulting from injuries arising from the operation of that vehicle in New York, regardless of fault. Ins.L. § 672 (McKinney's, Cum.Sup. 1979) [hereinafter referred to only by section number]. "Basic economic loss" is defined in § 671(1)(a–c) to include expenses for medical treatment, lost earnings, and other reasonable and necessary expenses on a per diem basis for no more than one year. Basic economic loss is expressly subject to a maximum of $50,000. "First party benefits", defined in § 671(2)(a–c) as basic economic loss reduced by a stated percentage of lost earnings and by other ascertainable amounts, become payable by the insurer "as the loss is incurred" and "are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained." § 675(1).[4]

The second prong of the Act arises from § 673(1). This section, applicable only to actions between "covered persons" (as that term is defined in § 671(10)), imposes two limitations on tort recovery for personal injuries: (1) the injured party has no cause of action against the allegedly negligent party for duplicative recovery of basic economic loss; and (2) the injured party has no right of recovery for "non-economic loss" (i. e., pain and suffering), except in the case of a "serious injury", as defined in § 671(4). Thus, in the case of covered persons, the only conventional tort actions left to the

common law are those for basic economic loss in excess of $50,000, for pain and suffering associated with a serious injury, and for property damage.

Moreover, the Act leaves intact all common law causes of action by covered or non-covered persons against non-covered persons. As a corollary, § 673(2) provides that, in an action by or on behalf of a covered person against a non-covered person, "an insurer which paid or is liable for first-party benefits on account of [injuries occasioned by the negligence of the non-covered person] shall have a lien against any recovery to the extent of benefits paid or payable by it to the covered person." Additionally, if the covered person in such a situation should choose not to commence an action against the non-covered party within two years after the accrual of the cause of action, the insurer's lien becomes an independent cause of action by the insurer against the negligent party. § 673(2). Thus, the Act redefines the rights of the injured covered party's insurer against the liable non-covered party without reference to the formerly controlling concept known as "subrogation."[5]

Our task, then, is to determine whether this statutory arrangement provides a cause of action in favor of Maria Vasquez's insurer against the allegedly negligent party, the United States, for the recovery of medical expenses paid to Ms. Vasquez for the treatment of her alleged injuries. Two definitional questions may be resolved easily. First, the amounts paid to Ms. Vasquez by Liberty Mutual clearly represent "basic economic loss" and "first-party benefits" as

which follows is based on the Court's description in that case. *Id.*, 38 N.Y.2d at 46–48, 378 N.Y.S.2d 1.

**4.** Section 672(2) allows an insurer to exclude from coverage a person who intentionally causes his own injury, who is injured as a result of operating a vehicle while intoxicated or while under the influence of a drug, or who is injured while committing a felony, operating a vehicle in a race or speed test, or operating a vehicle known to be stolen.

**5.** This redefinition reflects the New York Legislature's intention to set the Act apart from the

common law. By the same token, Liberty Mutual's characterization of itself as "subrogee" reflects it apparent desire to have this case decided with the least possible reference to the Act. There can be little doubt that the common law alone would allow Liberty Mutual to be subrogated to any rights of Maria Vasquez against the United States, after Liberty Mutual had compensated her for her injuries. The critical issue there, of course, would be negligence, the very issue which the Act relegates to the secondary inter-insurer phase, discussed *infra*.

those terms are defined in § 671(1) and (2). And second, Ms. Vasquez is a "covered person", according to § 671(10), because of her status as a pedestrian at the time of the accident and as a member of the household of Liberty Mutual's insured, William Gonzalez.

■ The next and critical issue is whether the United States is a covered person. If it is, this action would seem to be barred by the unequivocal language of § 673(1), which provides in pertinent part:

> "Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery . . . for basic economic loss." [6]

Two elements in the definition of covered person lead us to conclude that it includes the United States. Section 671(10) provides in its entirety:

> " 'Covered person' means any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle which has in effect the financial security required by articles six or eight of the vehicle and traffic law or which is referred to in subdivision two of section three hundred twenty-one of such law; or any other person entitled to first-party benefits."

Vehicle and Traffic Law § 321(2) (McKinney's, Cum.Supp.1979), referred to in the above definition, explicitly subjects certain vehicles to the provisions of the Act, even though its companion section, § 321(1), exempts them from the financial security requirements of article six of the V.T.L., §§ 310–321. Specifically exempted in § 321(1), thereby rendering its owner included in the above definition of covered person, is "any motor vehicle owned by the United States." Because the United States unquestionably "owned" the Postal Service truck involved in the alleged accident here,

we hold that it is a covered person within the meaning of § 671(10).

Alternatively, § 671(10) refers to "any other person entitled to first party benefits." In *United States v. Government Employees Insurance Co.*, 605 F.2d 669 (2d Cir. 1979), the Court of Appeals for this Circuit held that the United States is a "person" entitled to first party benefits within the purview of § 672(1)(a). In so holding, the court concluded that "the New York Legislature did not limit the class of persons who are eligible to recover expenses under the no-fault law to human beings." *Id.* at 670. *See State Farm Mutual Auto Insurance Co. v. Coppersmith*, 97 Misc.2d 37, 410 N.Y.S.2d 975 (Civ.Ct.N.Y.1978) (a non-human entity can be a "covered person" under § 671(10)).

Thus, by two rather clear references in § 671(10), the legislative intent underlying the Act seems to have been to include the United States in the definition of covered person, thereby removing it from participation in the classical tort actions abrogated by the Act in § 673(1).

This does not end the matter, however. Liberty Mutual argues that the Act does not fully provide for the situation here, regardless of the unequivocal language of § 673(1). It argues that the Act envisions the typical automobile accident situation involving two private individuals who own vehicles for which liability insurance is provided through a commercial insurer. The critical fact here, Liberty Mutual argues, is that the United States has no insurer in the classical sense. Thus, the facts here fall outside the scope of the Act and common law principles should apply, allowing Liberty Mutual to be subrogated to Ms. Vasquez's rights against the United States. If the Act were meant to cover the situation where one of the two covered persons is the United States, the argument goes, the Act would have said so.

To buttress this argument, Liberty Mutual points to the mechanism provided for in

---

**6.** It is undisputed here that the amount in issue, $7,212.00, represents only basic economic loss. No claim for pain and suffering was made here, and Liberty Mutual's payments covered only medical expenses incurred by Ms. Vasquez.

the Act to resolve disputes between the insurers of two covered persons arising from the typical accident situation. In that situation, § 672 provides that both insurers are liable for payment of first party benefits to all injured parties, regardless of the relative fault of their respective insureds. An injured party must take the initiative to trigger that liability by making a claim against one of the insurers. In practice, an injured party usually presents his claim to his own insurer. If the fact or extent of the insurer's liability is disputed, § 675(2) provides that the claimant may elect either to sue or to submit the dispute to arbitration, ultimate review of which is limited to the grounds specified in Article 75 of the New York Civil Practice Law and Rules.[7] In the event a final arbitration award exceeds five thousand dollars, the insurer explicitly retains the right to institute an action for adjudication of the dispute *de novo*. Once the injured parties are compensated and out of the picture, § 674 allows the insurers to recover from each other the amounts paid to their insureds, allocated on the basis of the relative fault of the parties to the accident. The sole means of obtaining such recovery, however, is mandatory arbitration, again subject only to the grounds for judicial review specified in C.P. L.R. Art. 75. *See generally Hartford Accident & Indemnity Co. v. Country-Wide Ins. Co.*, 63 A.D.2d 981, 405 N.Y.S.2d 775 (2d Dept. 1978). If an injured claimant should recover first party benefits from an insurer other than his own, the claimant's insurer does not thereby receive a lien on its insured's recovery which it may enforce in the courts; its only avenue of redress is the inter-company arbitration procedure delineated in § 674. *Hayes v. New York City Health & Hospitals Corp.*, 97 Misc.2d 748, 412 N.Y.S.2d 324 (Queens Cty. 1979).

Liberty Mutual argues incorrectly that, under this statutory arrangement, Ms. Vasquez could have chosen to seek recovery of

---

7. C.P.L.R. § 7511 sets forth the grounds upon which a court of competent jurisdiction may vacate or modify an arbitrator's award. The section reads in full as follows:

§ 7511. Vacating or Modifying Award.

(a) When application made. An application to vacate or modify an award may be made by a party within ninety days after its delivery to him.

(b) Grounds for vacating.

1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

(i) corruption, fraud or misconduct in procuring the award; or

(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or

(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or

(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

2. The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that:

(i) the rights of that party were prejudiced by one of the grounds specified in paragraph one; or

(ii) a valid agreement to arbitrate was not made; or

(iii) the agreement to arbitrate had not been complied with; or

(iv) the arbitrated claim was barred by limitation under subdivision (b) of section 7502.

(c) Grounds for modifying. The court shall modify the award if:

1. there was a miscalculation of figures or a mistake in the description of any person, thing or property referred to in the award; or

2. the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

3. the award is imperfect in a matter of form, not affecting the merits of the controversy.

(d) Rehearing. Upon vacating an award, the court may order a rehearing and determination of all or any of the issues either before the same arbitrator or before a new arbitrator appointed in accordance with this article. Time in any provision limiting the time for a hearing or award shall be measured from the date of such order or rehearing, whichever is appropriate, or a time may be specified by the court.

(e) Confirmation. Upon the granting of a motion to modify, the court shall confirm the award as modified; upon the denial of a motion to vacate or modify, it shall confirm the award.

first party benefits from the United States rather than from her own insurer. Moreover, Liberty Mutual mistakenly relies on *Marangiello v. Kamak*, 64 A.D.2d 624, 406 N.Y.S.2d 879 (2d Dept. 1978), to argue that Vasquez could have sued the United States to enforce that right.[8] Liberty Mutual thus draws the incorrect conclusion that, as Vasquez's insurer, it would be subrogated to that right and is not subject to the arbitration requirement of § 674.

This argument is flawed in two respects. First, it requires the implicit assumption that the United States is itself an "insurer." Section 671(7) defines an "insurer" as "the insurance company or self-insurer, as the case may be, which provides the financial security required by articles six or eight of the vehicle and traffic law." Although the United States is arguably a "self-insurer", we have already noted that V.T.L. § 321(1) exempts the United States from the financial security requirements of articles six or eight. Ante at 332. Thus, the second half of the above definition excludes the United States, an exclusion which cannot be laid to oversight.[9]

Secondly, the argument fails because it relies on a misreading of *Marangiello, supra.* In that case, plaintiffs sued their own insurer when it refused to make further first party benefit payments. Defendants moved to dismiss on the ground that § 675(2) mandates that arbitration is the sole means of resolving such a dispute. The Appellate Division held that § 675(2) unambiguously provides that the initial choice between suit and arbitration is solely at the option of the insured claimant. Moreover, once suit is commenced, it sounds in contract and does not involve issues of tort

liability arising from the accident. The case is thus inapposite to the case at bar in a number of respects: the United States is not an "insurer" within the meaning of the Act, and, obviously, could not be and is not Maria Vasquez's insurer; no contract existed between Maria Vasquez and the United States for the payment of first party benefits; and neither § 675(2) nor *Marangiello* contemplate suit predicated on tort liability, the basis for Maria Vasquez's purported right to sue the United States, to which Liberty Mutual is purportedly subrogated.

Contrary to Liberty Mutual's assertion, this state of affairs does not indicate a "gap" in the Act which can be filled only by resort to the common law. The Act's silence with respect to a determination of fault and subsequent reimbursement between an insurer and the United States does not negate the Act's implicit inclusion of the United States in the definition of covered persons. This inclusion clearly reflects the intent of the New York Legislature to place the burden of paying first party benefits on the injured party's insurer—and to leave that burden there—when the injured party, as here, is also a covered person. Liberty Mutual would have us ignore this intent and permit it a cause of action outside the purview of the Act. It is an invitation which the clear language of the Act allows us to decline.

### III

In summary, we conclude that:

(1) the United States is a "covered person" within the meaning of § 671(10); and

(2) Section 673(1) therefore bars this action, brought "on behalf of" another cover-

---

8. Indeed, the Administrator of Ms. Vasquez's estate filed a complaint against the United States (Docket No. 79 C 1601) in this Court on June 20, 1979, three months prior to the filing of the complaint in this case. We have treated the two as companion cases, holding disposition of the other case in abeyance pending disposition of the legal issue raised in this case.

9. Even if the United States could be characterized as an insurer within the above definition, Liberty Mutual would still be without a remedy against the United States in the instant case.

It is clear that the United States could not be made subject to the mandatory arbitration procedure specified in § 674, because it would conflict with the administrative arrangement established in the Federal Tort Claims Act. *See* 28 U.S.C. §§ 2401(b) and 2675(a), and fn. 2, *supra*. With a circularity so typical of the law, the Tort Claims Act thus waives the immunity of the United States on the substantive side while simultaneously pre-empting the applicable State law on the procedural side.

ed person for the recovery of payments meant to cover basic economic loss; and

(3) such a result comports with the legislative intent underlying the Act manifested by the inclusion of the United States in the definition of "covered person" and the exclusion of the United States from the interinsurer dispute resolution procedures at which fault becomes relevant.

Accordingly, the *motion of the United States for judgment on the pleadings pursuant to Fed.R.Civ.P.* 12(c) is hereby granted, and Liberty Mutual's complaint is hereby ordered dismissed.

SO ORDERED.