Marvin **PATRELLO**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**UNITED STATES of America,**
**Third-party Plaintiff and**
**Counterdefendant,**

v.

**Judy N. PATRELLO, Third-party**
**Defendant and Counterclaimant.**

**86 Civ. 6220 (SWK) (SEG).**

United States District Court,
S.D. New York.

Jan. 7, 1991.

---

Marvin Patrello, pro se.

Sarah Thomas, Asst. U.S. Atty., New York City, for U.S.

## OPINION

SHARON E. GRUBIN, United States Magistrate Judge:

This case, brought under the Federal Tort Claims Act, involves a relatively minor collision between a United States postal truck and a privately-owned automobile, but implicates important issues concerning the New York State "no-fault" insurance statute and the doctrines of preemption and sovereign immunity. Originally filed in the Civil Court of the City of New York against the driver of the truck, the action was removed to this court by the United States, after it substituted itself as defendant, and tried before me without a jury.

## BACKGROUND

Plaintiff, Marvin Patrello, was the owner of a 1979 Dodge Omni which his wife, third-party defendant and counterclaimant Judy Patrello, was driving on April 16, 1986. The trial evidence shows that at approximately 12:45 p.m. Mrs. Patrello had pulled her car over into a parking space on the north side of 259th Street in the Bronx, facing west and approximately ten to twenty feet from the next corner, the intersection of Post Road, in order to mail a letter. Mrs. Patrello testified that she emerged from her car, walked to the nearby mailbox, deposited her letter, got back in her car, started her car, pulled forward perhaps five to ten feet, still in the parking lane, and then, in a position about six feet from the corner of 259th Street and Post Road, began to pull out of the parking lane into the main road. It was raining that day, although apparently raining lightly. Mrs. Patrello testified that, having looked in her side mirror and found that she could not see well because of the rain, she then looked out the window of the car on the driver's side to see if anything was coming before she pulled out. Since the window was cloudy from fog, she rolled it down and put her head out to be sure. Seeing nothing coming, she began to pull out from the parking lane with her left directional signal on, and, according to her testimony, having pulled out only about one foot, her car was hit by a United States postal truck that seemed to have "just come out of nowhere." The evidence established that the postal truck, driven by postal employee Oswald Williams, was heading west on 259th Street after having made a right turn from Broadway. Mr. Williams testified that he was driving no faster than ten miles per hour at the time and did not see

Mrs. Patrello's car as he was approaching the corner until it suddenly pulled out from the parking lane and hit the truck.

Plaintiff, Mr. Patrello, has brought this action against the United States for damage to his car in the amount of $1,764.74. The government has filed a third-party complaint against Mrs. Patrello alleging that any damage was caused by her negligence and has also brought a claim against her for $54.00 representing damage to the postal truck. Mrs. Patrello, in turn, has counterclaimed against the government for pain and suffering from her alleged injuries in the amount of $5,000.00. The factual issues requiring determination and upon which my findings are set out below are to what extent the accident was caused by the negligence of Mrs. Patrello and/or Mr. Williams, the extent of Mrs. Patrello's injuries and the amount of damage to the vehicles. The legal issue to be determined, which is critical to this case and which appears never to have been considered before in any published opinion, is whether (assuming some negligence on the part of Mr. Williams, as I find below) Mrs. Patrello, who was an insured driver, must meet the burden of proving that she sustained "serious injury" pursuant to New York's no-fault insurance law or whether, because the defendant is the United States of America, that aspect of that statute is inapplicable because it is preempted. I conclude, for the reasons set out below, that "serious injury" must remain a requirement in this case and that Mrs. Patrello has not sustained her burden of proving that her injury rose to the required level of seriousness. This opinion constitutes my findings of fact and conclusions of law.

### DISCUSSION

### I

It is well-established that the doctrine of sovereign immunity bars suit against the United States without its consent. *See, e.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct.

1456, 31 L.Ed.2d 741 (1972); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 411–12, 5 L.Ed. 257 (1821). Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, the federal government has consented to be sued for the "negligent or wrongful acts or omissions" of its employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The FTCA itself precludes the imposition of liability in the absence of "negligent or wrongful acts or omissions," and state theories of absolute or strict liability therefore may not be applied against the United States. *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972) (reaffirming *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)); *Flynn v. United States,* 631 F.2d 678, 681–82 (10th Cir.1980); *Gibson v. United States,* 567 F.2d 1237, 1244 (3d Cir.1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).

As the accident out of which the instant tort claim arose occurred in New York, liability is to be determined under the law of New York. *Goodkin v. United States,* 773 F.2d 19, 21 (2d Cir.1985); *Liberty Mutual Insurance Co. v. United States,* 490 F.Supp. 328, 330 (E.D.N.Y.1980). Were the United States a private person, the applicable law under the circumstances of this case for recovery for personal injury would be Article 51 of New York's Insurance Law, officially titled the Comprehensive Motor Vehicle Insurance Reparations Act (hereinafter the "no-fault law"), N.Y.Insurance Law §§ 5101–5108 (McKinney 1985 & Supp.1988), and it is therefore such law that the FTCA requires us to apply herein. *Goodkin v. United States,* 773 F.2d at 21; *Liberty Mutual Insurance Co. v. United States,* 490 F.Supp. at 330. New York's highest court has described the New York no-fault law as two-pronged: "One prong deals with compensation; the other with limitation of tort actions." *Montgomery v. Daniels,* 38 N.Y.2d 41, 46, 378 N.Y.S.2d 1,

4, 340 N.E.2d 444, 446 (1975). The no-fault system guarantees prompt and full compensation for economic losses up to $50,000 without the necessity of recourse to the courts and simultaneously eliminates recovery for non-economic losses (*i.e.*, pain and suffering) in relatively minor cases. *Id.* at 55, 378 N.Y.S.2d at 13, 340 N.E.2d at 452. *See also Goodkin v. United States*, 773 F.2d at 21; *Licari v. Elliott*, 57 N.Y.2d 230, 236, 455 N.Y.S.2d 570, 573, 441 N.E.2d 1088, 1091 (1982).

The two-pronged nature of the no-fault law operates as follows. On the one hand, § 5103 requires insurers to compensate accident victims for their "basic economic loss" on account of personal injury by promptly distributing what are termed "first party benefits" without regard to fault. "Basic economic loss" essentially consists of medical expenses, loss of earnings and other "reasonable and necessary" expenses up to $50,000 per person. Section 5102(a). "First party benefits" means reimbursements for basic economic loss minus certain deductions not relevant herein. Section 5102(b). On the other hand, § 5104 of the no-fault law imposes two limitations on tort recovery for personal injuries in actions between "covered persons" as defined in § 5102(j), that is, persons entitled to first party benefits.[1] First, the injured party may not duplicate recovery of first party benefits but may recover in tort only that basic economic loss which exceeds $50,000. Second, with regard to "non-economic loss" or pain and suffering (*see* § 5102(c)), recovery is limited to that associated with "serious injury" as defined in § 5102(d).

The New York State Legislature's goal in enacting this scheme was that of

> guaranteeing full and fair recovery to all victims by reducing pressure on a seriously injured person to compromise down his claims in order to obtain funds for treatment while at the same time eliminating pressure on insurers to compromise up claims by persons suffering minor injuries in order to avoid the expense of investigating and defending against such minor claims.

*Montgomery v. Daniels*, 38 N.Y.2d at 55, 378 N.Y.S.2d at 13, 340 N.E.2d at 452. Reading §§ 5103 and 5104 together, one can see that the no-fault law thus provides covered persons with a trade-off. In exchange for their entitlement to prompt payment of first party benefits under § 5103 without regard to fault, covered persons must also accept § 5104's tort recovery limitations in actions against other covered persons.

■ In the present action, third-party defendant Mrs. Patrello seeks to recover from defendant United States compensation only for her "non-economic loss"—the pain and suffering she allegedly sustained in the accident. Under § 5104, if both Mrs. Patrello and the United States are deemed covered persons, then Mrs. Patrello must first prove that she suffered a serious injury in order to recover for her pain and suffering. However, if either Mrs. Patrello or the United States is not a covered person, § 5104 is inapplicable and Mrs. Patrello need not prove "serious injury" in order to recover for the pain and suffering resulting from any negligence of defendant's employee.[2]

**1.** § 5102(j) provides in full as follows:
'Covered person' means any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle which has in effect the financial security required by article six or eight of the vehicle and traffic law or which is referred to in subdivision two of section three hundred twenty-one of such law; or any other person entitled to first party benefits.

**2.** Several New York courts have held that tort plaintiffs who are non-covered persons due to their own failure to acquire mandatory no-fault insurance must nevertheless establish "serious

injury" in order to recover for non-economic loss. The rationale for this result is that to exclude such uninsured plaintiffs from the serious injury threshold requirement "would be giving a person who violates the law (and those who obtain legal standing through him) a greater benefit than a person who obeys the law." *Marc–Charles v. Krug*, 93 Misc.2d 603, 608, 403 N.Y.S.2d 658, 661 (footnote omitted). *See also Scarpelli v. Marshall*, 92 Misc.2d 244, 247–48, 399 N.Y.S.2d 1001, 1003 (N.Y.Sup.Ct.1977). *But see Stark v. Miller*, 95 Misc.2d 643, 408 N.Y.S.2d 274 (N.Y.Civ.Ct.1978) (uninsured driver not required to meet "serious injury" threshold).

It is clear that the United States is a covered person under the no-fault law. The definition of a covered person includes "any owner ... of ... a motor vehicle ... which is referred to in subdivision two of section three hundred twenty-one" of the New York Vehicle and Traffic Law, "or any other person entitled to first party benefits." Section 321(2) of the Vehicle and Traffic Law, when read together with § 321(1) of the same law, expressly subjects certain motor vehicles, including those owned by the United States, to the provisions of the no-fault law. The postal truck involved in the accident herein was owned by the United States and was therefore subject to the no-fault law as a covered person within the no-fault law's definition of that term. *Liberty Mutual Insurance Co. v. United States*, 490 F.Supp. at 332. Alternatively, the United States is a covered person under that clause of the definition referring to "any other person entitled to first party benefits." *United States v. Government Employees Insurance Co.*, 605 F.2d 669 (2d Cir.1979); *Liberty Mutual Insurance Co. v. United States*, 490 F.Supp. at 332.

A thornier issue is raised by the question of whether Mrs. Patrello is a covered person within the meaning of the no-fault law. In *Cooper v. United States*, 635 F.Supp. 1169 (S.D.N.Y.1986), the Honorable Robert W. Sweet of this court held that an uninsured pedestrian, allegedly injured after being struck by a United States Postal Service vehicle, was not a covered person within the meaning of § 5102(j). Although the statutory definition of covered persons includes pedestrians injured by vehicles owned by the United States, Judge Sweet held that because the United States can be held liable under the FTCA only after a finding of fault, *see, e.g., Laird v. Nelms*, 406 U.S. at 798, 92 S.Ct. at 1900, the FTCA and the doctrine of sovereign immunity render a nullity those provisions of New York's no-fault law which would require the United States to pay first party benefits without regard to fault. As a result, an uninsured pedestrian injured by a motor vehicle owned by the United States has no source to which to turn for the recovery of first party benefits and therefore cannot be considered a covered person under § 5102(j). 635 F.Supp. at 1173. At issue in the *Cooper* decision was the right to sue in tort for basic economic loss; although mention was made of an additional claim for pain and suffering, such claim was not the subject of the summary judgment motion before the court and was not discussed. However, as Mrs. Cooper was categorically declared not to be a covered person within the meaning of § 5102(j), and as the court stated that her common law tort action was "not barred by the restrictions applicable to covered persons set forth in § 5104," 635 F.Supp. at 1173, it follows that in addition to being permitted to sue in tort for all her basic economic loss, Mrs. Cooper would not have been required to meet § 5104's "serious injury" threshold in order to collect damages for her pain and suffering.

Applying this analysis to the facts of our case, it appears that Mrs. Patrello, unlike Mrs. Cooper, must be required to prove serious injury. Mrs. Cooper was held not to be a covered person by virtue of her status as an uninsured pedestrian injured by a motor vehicle owned by the United States, a party exempt from paying first party benefits without proof of fault by the doctrine of sovereign immunity. As Mrs. Cooper had nowhere else to turn for the prompt payment of first party benefits, she was therefore held not to be restricted by the no-fault law's tort recovery limitations. Mrs. Patrello, on the other hand, although allegedly injured like Mrs. Cooper in an accident with a government-owned motor vehicle, was the operator of an insured motor vehicle; as such, she was a covered person under that portion of the definition which refers to "any ... operator ... of" an insured motor vehicle. Because she was therefore able to receive first party benefits despite sovereign immunity from a source independent of the United States, *i.e.*, her own insurance carrier, she was not foreclosed from receiving first party benefits by the doctrine of sovereign immunity, is therefore definitionally a covered person and, as a result, is required under § 5104 for recovery of damages for her alleged

pain and suffering to prove "serious injury" as defined in § 5102(d) in this tort action against the United States. *See also Vitale v. Tisch*, 662 F.Supp. 975 (S.D.N.Y. 1987) (passenger in private car struck by postal truck required to prove "serious injury" under the no-fault law in FTCA action); *Lucas v. United States*, No. 84–5655, slip op. at 3 (S.D.N.Y. Aug. 8, 1985) (passenger in motor vehicle owned by United States which collided with private car required to prove "serious injury"), *aff'd*, 788 F.2d 5 (2d Cir.1986).

As stated by Judge Sweet, "[t]he no-fault law was not intended to provide a windfall to either the injured party or the tortfeasor." *Cooper v. United States*, 635 F.Supp. at 1173. The equities of the result reached herein are apparent. Just as it was fair to allow Mrs. Cooper, an innocent uninsured pedestrian who was foreclosed from the benefits of the no-fault law, to maintain a common law tort action without being restricted by the no-fault law's tort recovery limitations, it is fair to require Mrs. Patrello, an insured motor vehicle operator entitled to participate in the no-fault law's compensation scheme, to meet the no-fault law's "serious injury" threshold requirement in this action.

## II

■ "Serious injury" is defined in § 5102(d) as follows:

"Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; *permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.*

(Emphasis added). The three definitions emphasized in the above quotation are those that Mrs. Patrello contends describe her injury. Mrs. Patrello testified that although she was wearing her seat belt she hurt her shoulder, her back and her head in the accident because she was thrown forward against the steering wheel and her forehead hit the windshield. Three days after the accident, when the pain she felt in her back and neck had not disappeared, she went to the emergency room of St. Joseph's Hospital where a physician prescribed Valium and Flexiril to relax her muscles. Multiple x-rays were taken and it was determined that she had no fractures or dislocations. About a week later she saw her own doctor who said she had sprained the muscle in her back. He told her to take muscle relaxants but she preferred instead to take Excedrin and use hot compresses. The medical records from this examination conclude that she suffered a "Sprain—Neck & Body." Mrs. Patrello said her neck continued to hurt when she turned it for about two weeks following the accident and her shoulder and back hurt constantly for about six weeks. Almost two months later, on June 12, she was examined by an orthopedist who noted that she described slight tenderness and "mild, intermittent symptoms of pain" in the area of her shoulder blade, but that she had "full range of motion of the spine and shoulders, cervical and thoracolumbar spine." The doctor at that time concluded that she had suffered a "mild healed sprain" and advised her to do active exercises, take salt baths and carry on her normal activities. (Ex. 2.) She apparently did not feel the need to go again to a doctor because of any pain until over a year later, in November 1987, when her back started to bother her again.[3] When asked at the time of trial whether she could conduct her basic activities, the only specific limitations she set forth were that she could not scrub

---

**3.** Mrs. Patrello explained that she visited a doctor on a regular basis for allergy treatment and would tell the doctor during these visits about her continuing pain in the back.

the floor without developing pain and could not iron clothes longer than two hours without pain. She takes Excedrin to relieve the pain and then is able to carry on. She had been working at the time of the accident as a temporary secretary and felt unable to go to work for about six weeks after the accident. At the time of trial she claimed to be still unable to sit to type for an entire day without developing pain. She said her back starts hurting about noon and then, after the pain goes away during lunchtime, it begins to return after about an hour of typing in the afternoon. In addition to this intermittent back pain, Mrs. Patrello testified that she suffers "migraine" headaches once every week or two.

I must conclude based on all the evidence that Mrs. Patrello's injuries were not "serious" within the meaning of § 5102(d) of the no-fault statute. "There can be little doubt that the purpose of enacting an objective verbal definition of serious injury was to 'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.'" *Licari v. Elliott,* 57 N.Y.2d at 236, 455 N.Y.S.2d at 573, 441 N.E.2d at 1091 (quoting the Memorandum of State Executive Dep't, 1977 McKinney's Session Laws of N.Y., p. 2448). The only conclusion to be drawn from the objective medical evidence in the record is that Mrs. Patrello suffered a mild sprain in her upper back during the accident that healed within six to eight weeks and, at most, gives her some discomfort from time to time. "Although permanent pain, even of an intermittent character may form the basis of a 'serious injury,'" the New York courts have emphasized that "subjective complaints [of pain] unsupported by credible medical evidence, do not suffice" to form the basis of "serious injury." *Dwyer v. Tracey,* 105 A.D.2d 476, 477, 480 N.Y.S.2d 781, 783 (3d Dep't 1984). *See Lucas v. United States,* No. 84 Civ. 5655 (MP), slip op. at 3; *Licari v. Elliott,* 57 N.Y.2d at 238–39, 455 N.Y.S.2d at 574, 441 N.E.2d at 1092; *Zoldas v. Louise Cab Corp.,* 108 A.D.2d 378, 489 N.Y.S.2d 468, 473 (1st Dep't 1985); *Jones v. Sharpe,* 99 A.D.2d 859, 860, 472 N.Y.S.2d 779, 780 (3d Dep't),

*aff'd,* 63 N.Y.2d 645, 479 N.Y.S.2d 520, 468 N.E.2d 702 (1984). There is no evidence in this record other than Mrs. Patrello's own testimony that she is limited in any respect. The documentary evidence shows that she had a full range of motion two months after the accident. Plaintiff's Exhibit 1 is an unsworn note dated October 8, 1987 from Mrs. Patrello's regular doctor whom she saw on a routine basis for treatment of her allergies. The note, addressed "To Whom It May Concern," reads:

> Above patient had been seen and followed up in our office from 4/28/86 since she had incurred motor vehicular accident which patient sustained upper [illegible word] back pain which until present time *patient claims it still bothers her* especially when she does strenuous activity.

(Emphasis added.) At trial, when asked the origin of this note, Mrs. Patrello explained as follows:

> I requested it because [the Assistant United States Attorney] told me when I told her I was still in pain doing certain activities that I would have to prove it in court, and I felt the only way to do that was go and get a note from the doctor stating that I was still seeing her about it. That's how it came about.

(Tr. 24). It must be noted that the note merely reports Mrs. Patrello's "claims" of pain. None of the receipts she received for prescriptions is dated later than June 1986 (Joint Ex. 4). Moreover, none of the medical evidence at any time has indicated that she experienced "migraine" headaches or that such headaches could result from this type of accident. *See, e.g., Dwyer v. Tracey,* 105 A.D.2d at 477, 480 N.Y.S.2d at 783 ("Some degree of ... causation must be demonstrated"). Moreover, there was no testimony as to how such headaches limited her activities, if at all. In *Licari v. Elliott,* the Court of Appeals for the State of New York said the following:

> It requires little discussion that plaintiff's subjective complaints of occasional, transitory headaches hardly fulfill the definition of serious injury. Plaintiff offered no proof that his headaches in any

way incapacitated him or interfered with his ability to work or engage in activities at home. In fact, plaintiff testified that such headaches occurred only once every two or three weeks and were relieved by aspirin.... To hold that this type of ailment constitutes a serious injury would render the statute meaningless and frustrate the legislative intent in enacting no-fault legislation.

57 N.Y.2d at 238–39; 455 N.Y.S.2d at 574, 441 N.E.2d at 1092. In *Zoldas v. Louise Cab Corp.*, the court granted the defendant's motion for summary judgment where the plaintiff had presented more than we have in this record:

> [Plaintiff] complains of pain and a limitation of motion in her right arm, as well as headaches and neck and back pain; and attempts to establish permanency and causation through the assertions, clearly hearsay, of what her physicians told her. Such conclusory, self-serving allegations are entitled to little weight, and are certainly insufficient to raise a triable issue of fact. The report from plaintiff's treating physician, Dr. Klingon, does not constitute evidentiary proof in admissible form.

108 A.D.2d at 383, 489 N.Y.S.2d at 472.

With respect to the first definition of "serious injury" under which Mrs. Patrello seeks relief, a "permanent, consequential limitation of use of a body organ or member," Judge Pollack of this court has observed that "[t]he term 'consequential' connotes an 'important' or 'significant' impairment." *Lucas v. United States*, slip op. at 2. In the *Lucas* case the plaintiff claimed he suffered from "constant, intense pain," but Judge Pollack found that the medical records did not support the claim since they showed he sought no treatment for accident-related injuries for almost one year. The court held that the "slight decrease" in mobility that was diagnosed did not rise to the level of a serious injury. Here, we do not have objective evidence of even a "slight" limitation. Even accepting Mrs. Patrello's subjective claims of pain, we have at best "a mild injury, which plainly has not prevented plaintiff from continuing

her daily activities." *Dwyer v. Tracey*, 105 A.D.2d at 478, 480 N.Y.S.2d at 783.

With respect to the second definition of serious injury under which Mrs. Patrello seeks relief, "significant limitation of use of a body function or system," the New York Court of Appeals explained in *Licari v. Elliott* that the word "significant" is to be construed "to mean something more than a minor limitation of use" and that "a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute." 57 N.Y.2d at 236, 455 N.Y.S.2d at 573, 441 N.E.2d at 1091. *See also Zoldas v. Louise Cab Corp.*, 108 A.D.2d at 384, 489 N.Y.S.2d at 473. Indeed, the situation in the instant case is similar to that in *Licari*, where the court rejected the plaintiff's claim and said, "taken in its most favorable light, the evidence at trial established only that plaintiff suffered a painful sprain which limited the movement of his neck and back, [and that the p]laintiff offered no evidence as to the *extent* of the limitation of movement." 57 N.Y.2d at 239, 455 N.Y.S.2d at 574–75, 441 N.E.2d at 1092–93 (emphasis in original). Similarly, although the plaintiff there complained of headaches and dizziness, the court noted as follows:

> No proof was offered to show that these ailments ever went beyond mere temporary discomfort, relieved by aspirin. The legislature could not have intended headaches and dizziness of the type experienced by plaintiff to constitute a significant limitation of use of a body function or system.

57 N.Y.2d at 239, 455 N.Y.S.2d at 575, 441 N.E.2d at 1093. *See also Locatelli v. Blanchard*, 108 A.D.2d 1032, 1033, 485 N.Y.S.2d 603, 604 (3d Dep't 1985); *Nolan v. Ford*, 100 A.D.2d 579, 473 N.Y.S.2d 516 (2d Dep't), *aff'd*, 64 N.Y.2d 681, 485 N.Y.S.2d 526, 474 N.E.2d 1194 (1984). That Mrs. Patrello claims to be unable to sit at a typewriter more than three hours, iron clothes longer than two hours or scrub her floor without developing some pain, clearly does not satisfy the statutory requirements.

The third definition of serious injury on which Mrs. Patrello relies is that of "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." The Court of Appeals for the State of New York has instructed that "the words 'substantially all' should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment." *Licari v. Elliott*, 57 N.Y.2d at 236, 455 N.Y.S.2d at 573, 441 N.E.2d at 1091. The court has also made clear that "the statutory 90/180–day period of disability requirement ... should be considered a necessary condition to the application of the statute." *Id.* Mrs. Patrello has admitted that she stayed away from work for a period of only approximately six weeks because of the accident. Moreover, that she claims to develop pain after typing for three hours, ironing clothes for two hours and scrubbing the floor is insufficient to establish that she was unable to perform "substantially all" of her daily material acts. *See, e.g., Licari v. Elliott*, 57 N.Y.2d at 238, 455 N.Y.S.2d at 574, 441 N.E.2d at 1092 ("Since plaintiff was able to maintain his daily routine for most of each day after returning to work, it should be abundantly clear that plaintiff was not prevented from performing substantially all of his daily activities...."); *Covington v. Cinnirella*, 146 A.D.2d 565, 566, 536 N.Y.S.2d 514, 515 (2d Dep't 1989).

### III

■ As Mrs. Patrello is prevented from recovering damages for pain and suffering, the only remaining question herein is what amount, if any, is to be awarded for property damage. Mr. Patrello claims damage to his car of $1,764.74, and the United States claims damage to the postal truck of $54.00. The answer to this question necessitates findings as to the respective negligence, if any, of Mrs. Patrello and/or Mr. Williams in causing the accident. It seems quite clear to me from the credible evidence at trial that both parties are at fault for the accident. Mrs. Patrello claims that before she moved the car she looked in her side view mirror and saw the street was empty, but because the mirror was "foggy," she opened the window and leaned her head out to double check that nothing was coming before proceeding to pull out of the parking spot. She says that before she "even got a foot out of the parking spot," the car was hit by the postal truck. The Patrellos claim the truck had to have come down the block at an excessive rate of speed for her to have not seen it only several seconds earlier. Mr. Williams, on the other hand, claims he was going no faster than 10 m.p.h. but that Mrs. Patrello just pulled out so suddenly he did not see her until their vehicles collided. Mr. Patrello claims that a car traveling at 15 m.p.h. would take 4 seconds to get down the street of approximately 250 feet.[4] From this calculation, presumably, Mr. Patrello would have the court infer that Mr. Williams must have been driving at a speed much greater than 15 m.p.h. or Mrs. Patrello would have seen the truck when she looked out her window. The problem with that theory, however, is that it assumes Mrs. Patrello did adequately look to see if anything were coming before moving the car out. In any event, according to my own calculations, a truck traveling at 15 m.p.h. would go 250 feet in 11.36 seconds. At the 10 m.p.h. Mr. Williams claims he was traveling, it would take 17.04 seconds. I believe that if Mrs. Patrello looked out her window she would have seen the truck approaching. In order for the truck to have come around the corner 250 feet away and gotten to where she was parked in the several seconds it would have taken her to lift her foot from the brake and move the

---

**4.** Mr. Patrello claimed to have a videotape showing him driving down the street in 4 seconds at 15 m.p.h., but the videotape was ruled inadmissible.

Mrs. Patrello, incidentally, testified that a car traveling 30 m.p.h. would go the distance in 8 seconds (Tr. 46).

car out to the left after having looked out the window, Mr. Williams would have had to be traveling at a rate of speed so fast as to have been extremely unlikely under the circumstances. She claims not to have seen the truck at all, when, in actuality, it had to have been relatively close to her. *See Lavington v. United States,* No. 87 Civ. 6414 (RO), slip op. at 1 (S.D.N.Y. January 26, 1990) (1990 Westlaw 6587). However, I also believe it extremely unlikely that Mr. Williams was traveling 10 m.p.h. or less. If he had been going that slowly, he should have been able to see Mrs. Patrello's car and to stop before colliding with it.

In addition to the testimony of Mrs. Patrello and Mr. Williams, several other witnesses were presented. Timothy Nevins, who lived in the building in front of which Mrs. Patrello had parked, testified that in walking down the street toward Broadway he saw the postal truck traveling at an excessive speed that was definitely more than 10 m.p.h. before the accident, although on cross-examination it appeared he could have remembered another truck and a different accident. He said many accidents occur on that block and trucks from the Post Office a block away always speed up and down the street. Gary Winfield was a Vehicle Analyst for the Post Office who went to the scene of the accident after Mr. Williams called the Post Office to report it. He testified, based on what Mrs. Patrello and Mr. Williams told him at that time, that he believed Mrs. Patrello pulled out without adequately looking. Shirley Sackes, Mr. Williams' supervisor at the Post Office who went to the scene of the accident with her supervisor, Kevin Collin, about 10 or 15 minutes after it happened, recalled that Mrs. Patrello admitted at that time that the accident was her fault. Mrs. Patrello and Mr. Williams have each testified to inculpatory statements made by the other.

I find, taking into account all the testimony, the accident reports and other documentary evidence, and the positions of the two vehicles after the accident and their respective damage, that Mrs. Patrello was negligent in moving her car into the road without having looked adequately and that Mr. Williams was also negligent in going at a speed considerably higher than 10 miles per hour. I thus apportion blame for the accident at 75 percent for Mrs. Patrello and 25 percent for Mr. Williams. In arriving at this conclusion I have also taken into account § 1162 of the Vehicle and Traffic Law applying to the starting of a parked vehicle and providing, "No person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."

With respect to damages, Mr. Patrello testified that he received three estimates from mechanics for repair of the car. The first estimate of $1,131.20 represented what mechanical work needed to be done. The second estimate of $340.86 was from a different source and represented the amount of body work. The total of these two estimates, representing the amount for which Mr. Patrello could have repaired the car, is $1,472.06. A third estimate of $1,764.74 is from another repair shop where both the mechanical work and the body work could have been done. These estimates were made for submission of the claim to the government. Mr. Patrello seeks to recover the last amount of $1,764.74, apparently on the theory that it would have been more convenient to have the car repaired at one place rather than two. In reality, however, Mr. Patrello paid only $270.63 for repairs to the car and thereafter sold the car for $300.00. He explained that he was advised by the various mechanics that the car "would never be the same" and that he should simply repair what was necessary in order to drive it locally and temporarily. It appears from the documentary evidence, however, that the car was driven close to 700 miles before it was repaired at all. At the time of the accident, the car was seven years old, and its odometer showed it had gone about 84,000 miles. None of the parties has submitted any other evidence of the amount of damage to the car or the value of the car in 1986. Given the doctrine of mitigation of damages, and given the fact that Mr. Patrello told the repair garages that he need-

26

ed an estimate for the purposes of a claim, I find based on the photographs in evidence and all the attendant circumstances of the accident that damage to the car should be assessed at $980.00. Thus, Mr. Patrello is entitled to receive $980.00 reduced by 75% for Mrs. Patrello's negligence (which the New York Vehicle and Traffic Law imputes to him in this situation) from the United States, and the United States is entitled to an award of $54.00 reduced by 25% for the negligence of its driver. Judgment therefore should be entered for the plaintiff and against the defendant in the amount of $204.50. Submit judgment accordingly.

SO ORDERED.