**Valerie VENTRA, Tina Degrazia and Maria Dellicarpini, Plaintiffs,**

**v.**

**UNITED STATES of America, New York Bus Service and Sonia Rivera, Defendants.**

**No. 99 Civ. 10649(SHS).**

United States District Court, S.D. New York.

Nov. 8, 2000.

---

Jay M. Weinstein, Woodmere, NY, for plaintiffs.

Sarah S. Norman, Office of the U.S. Attorney, New York, NY, for U.S.

Charles D. Onofry, Cuddeback & Ono-fry, Port Jervis, NY, for New York Bus Service, Sonia Rivera.

*OPINION*

STEIN, District Judge.

This action arises out of a motor-vehicle accident between a bus and a United States Postal Service tractor-trailer. Three of the bus passengers are suing the owner of the bus, the bus driver, and the United States for their injuries pursuant to the Federal Tort Claims Act and New York state law. The United States has moved for summary judgment pursuant to Fed.R.Civ.P. 56 against one of the plaintiffs – Maria Dellicarpini – on the grounds that she did not sustain a serious injury as required by the New York Comprehensive Motor Vehicle Insurance Reparations Act (the "No–Fault Law"). The bus owner – New York Bus Service – and driver – Sonia Rivera – join in that motion. Plaintiff opposes the motion by (1) quoting a report from a doctor who now disavows the quoted findings because the plaintiff and her attorney materially misled him, (2) submitting an affirmation from a doctor whose identity plaintiff did not disclose during discovery, and (3) declaring the findings of her own treating physicians to be unreliable. The government's motion is granted because the admissible evidence demonstrates that plaintiff suffered no serious injury from the accident. In addition, plaintiff is precluded (1) pursuant to Fed. R Civ. P. 37(c) from relying upon the medical opinion of a treating physician whose identity she failed to disclose during the course of discovery, and (2) pursuant to the inherent powers of this Court from relying upon the medical opinion of a physician whom she affirmatively misled.

I. BACKGROUND

On February 23, 1999, Maria Dellicarpini was a passenger on a New York Bus Service bus when it was struck from behind by a United States Postal Service tractor-trailer. (Dellicarpini Dep. at 23, annexed to the Normand Decl.) [1] Her body was "jolted forward"; however, it did not strike any part of the bus or any other passenger. (*Id.*) She exited the bus without assistance and went to work. (*Id.* at 60, 73; Rivera Dep. at 70, 78.) Later that day, she began to feel pain in her neck and sought medical treatment. (Dellicarpini Dep. at 21–22.) The doctor at the urgent care facility prescribed medication, which Dellicarpini did not take. (*Id.* at 24.)

**A. Treatment by Dr. Saint–Phard**

A few weeks later, because her pain was not subsiding, Dellicarpini sought treatment from Dr. Deborah Saint–Phard, a specialist in physical medicine and rehabilitation. (Dellicarpini Dep. at 67; Saint–Phard Dep. at 8–9.) Dr. Saint–Phard found that Dellicarpini had some restriction in her range of motion in her neck when instructed to move her head without assistance. (Saint–Phard Dep. at 21.) However, when the doctor moved her head for her, Dellicarpini had a full range of motion. (*Id.* at 21, 113–114, Ex. 2.) X-rays of her cervical spine were negative. (*Id.* at 26, Ex. 3.) Dr. Saint–Phard diagnosed her with "cervical tension myalgia secondary to whiplash injury," meaning Dellicarpini was suffering from a neck and upper shoulder strain likely caused by the accident. (*Id.* at 30, Ex. 2.) The doctor prescribed physical therapy and two medications to help reduce the swelling and lessen the pain. (*Id.* at 32, Ex. 2.) Dellicarpini participated in the physical therapy, but did not taken the medications. In fact, Dellicarpini has never taken any of the medications prescribed by any of her doctors because she is concerned that medication will make her drowsy and af-

---

**1.** Unless otherwise noted, all deposition evidence is annexed to the Declaration of Sara

Normand dated July 14, 2000.

fect her ability to care for her young child. (Dellicarpini Dep. at 24–25, Ex. 7.)

In April of 1999, Dr. Saint–Phard examined plaintiff again. She found some muscle spasms in the right side of the neck and ordered an MRI, the results of which were normal. She again diagnosed plaintiff with "cervical tension myalgia secondary to a whiplash injury." (Saint–Phard Dep. at 45–48, 50–51, 117, 126–31, Ex. 7.)

A few days later, Saint–Phard examined plaintiff again. (Saint–Phard Dep. at 9.) At this point, the doctor believed that anxiety – rather than the accident itself – was contributing to the continuance of pain. (*Id.* at 58–62.) Saint–Phard subsequently examined plaintiff monthly until August – six months after the accident – when she formally concluded that plaintiff's accident related injuries were resolved. (Saint–Phard Dep. at 76–77, 89–91, Ex. 12, 14, 16.)

Dellicarpini returned to Dr. Saint–Phard three months later complaining of increasing neck pain. After an electrodiagnostic evaluation, the doctor concluded that Dellicarpini may have a pinched nerve in her neck, but did not believe it was related to the accident. She recommended that the plaintiff take medication and receive cervical epidural steroid injections; however, plaintiff did neither. (Saint–Phard Dep. at 78, 87–88, 99, 109–10, Ex. 17, 18; Dellicarpini Dep. at 24, 43–44, 94–95.)

**B. Treatment by Dr. Westrich**

In December of 1999, Dellicarpini sought a second opinion from Dr. Geoffrey Westrich, an orthopedic surgeon at the Hospital for Special Surgery. (Westrich Dep. at 8, Ex. B.) He found that her active range of motion, which is based on the patient's subjective complaints of pain, was restricted, but her passive range of motion, which is based on a doctor's objective evaluation of the patient's ability to move, was unrestricted. (*Id.* at 15–17.) Dr. Westrich also found that plaintiff suffered from a muscle spasm. (*Id.* at 18.) Dellicarpini underwent another MRI, which was also

negative. (*Id.* at 21, 23–24, 51.) Nevertheless, Dr. Westrich referred plaintiff to a neurologist, Dr. Dexter Sun, to examine her for nerve damage. Dr. Sun diagnosed her with an inflammation of the muscle, but no nerve damage. He found no need for the epidural injections suggested by Saint–Phard, and instead recommended that the plaintiff take a muscle relaxant, an anti-inflammatory, and continue physical therapy. (*Id.* at 26, 34, Ex. E.)

Dr. Westrich examined Dellicarpini two additional times. When Dellicarpini informed him she was not taking the prescribed medication, the doctor encouraged her to seek treatment elsewhere, because he could not help her if she did not take the medication. (Westrich Dep. at 27, 30, 34, 36, 41, 52.) He could not determine whether her injuries were caused by the accident because he did not examine the plaintiff until ten months after the accident. (*Id.* at 39, 43.) Dellicarpini, however, claims that Dr. Westrich told her that her injuries were in fact related to the accident. (Weinstein Decl. Ex. A.)

**C. Examination by plaintiff's no-fault insurance carrier's doctor**

At the request of Dellicarpini's no-fault insurance carrier, Dr. Kenneth Falvo, an orthopedic surgeon, examined plaintiff six months after the accident and concluded that she had experienced a cervical strain which had resolved itself. (Falvo Report.)

**D. A second accident and an examination by Dr. Morrissey**

On April 4, 2000 – the very day plaintiff was scheduled to be examined by the government's doctor – she was involved in another motor-vehicle accident. While she was driving in "stop-and-go" traffic, her car was struck from behind by a van and her body was "jolted forward." (Dellicarpini Dep. at 114–17, 135.)

Just three hours later, Dellicarpini and her attorney went to the office of Dr. James Morrissey, an orthopedic surgeon,

whom the government had designated to examine plaintiff. (Morrissey Decl. ¶¶ 4, 5, Ex. B.) Dellicarpini told him about the accident at issue in this case and her subsequent medical history, but, astonishingly, did not tell him about the accident that had occurred only hours earlier. (*Id.* ¶ 5.) He diagnosed her with a "mild residual cervical sprain." (*Id.* Ex. B.) When Dr. Morrissey learned of the second accident, he stated that had he known she was in a car accident the very day he examined her, he "would have concluded that [that accident], rather than the February 23, 1999 rear-end collision, was the likely cause of Ms. Dellicarpini's symptomatology." (*Id.* ¶ 5.)

### E. Treatment by Dr. Krosser

A day after the second accident, Dellicarpini sought treatment from Dr. Barry Krosser, an orthopedist, and told him she suffered from back pain as a result of the second accident. (Supp. Normand Decl. Ex. A.) She did not tell him about the accident at issue in this case. (Dellicarpini Dep. at 129–30.) Both Dellicarpini and her attorney confirmed at a deposition in June of 2000 that Dr. Krosser was not treating plaintiff for any injuries related to this case. (*Id.* at 129–30, 140, 146, 158–59.) Plaintiff did not disclose Dr. Krosser to the government as a treating physician or expert witness. (Def. Reply Mem. at 8; Pl. Mem. at 5.) After learning about the second accident and Dr. Krosser's treatment, the government subpoenaed Dellicarpini's medical records from Krosser. (Supp. Normand Decl. Ex. A.) He subsequently submitted an affirmation stating that he is now aware that Dellicarpini was in a previous accident, and he finds that her injuries were caused by the first accident, rather than the second accident. (Weinstein Decl. Ex. B.)

### F. Plaintiff's activities since the accident

Dellicarpini missed one-half day of work on the day of the accident at issue, but did not miss any other time from work as a result of her injuries. (Dellicarpini Dep. at 11–12.) She is not currently working because she wants to "spend some time with [her] child." (*Id.* at 64.) She confirms that her decision not to work is not related to the accident at issue. (*Id.* at 10, 64.) For the eleven months plaintiff worked after the accident, she was able to perform all her tasks as an administrative assistant, including "typing," "answering phones" and "lots of paperwork"; however, she experienced some pain while performing those activities. (*Id.* at 11–14, 71–72, 82.) Dellicarpini has also been able to perform all her household activities – albeit with some pain – including cooking, cleaning, laundry, grocery shopping, taking out the garbage, and caring for her two-year old son. Her physicians never placed any restrictions on her work or household activities. (*Id.* at 47–49, 84, 102; Saint–Phard Dep. at 49–50; Westrich Dep. at 54–55.)

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen,* 64 F.3d at 79 (citation omitted) (quoting *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific

facts to show there is a factual question that must be resolved at trial. Fed. R.Civ.P. 56(e); *see also Legal Aid Society v. City of New York,* 114 F.Supp.2d 204 (S.D.N.Y.2000). A nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). In short, a nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## B. Preclusion of evidence

Plaintiff attempts to create a factual question regarding the severity of her injury by citing the medical opinions of Drs. Morrissey and Krosser. However, this evidence is precluded due to plaintiff's misconduct in procuring these opinions.

### 1. Dr. Morrissey's medical findings

■ As noted above, plaintiff was examined by defendant's expert Dr. James Morrissey a few hours after she was in a second motor-vehicle accident. The circumstances surrounding the two accidents were very similar; both involved a rear-end collision in which plaintiff was "jolted forward." Yet neither Dellicarpini nor her attorney – who accompanied her to the examination – ever told Dr. Morrissey that she had been involved in this second accident just hours before the examination. When Morrissey learned of the second accident and plaintiff's misuse of his findings, he specifically disavowed any finding of a causal connection between plaintiff's symptoms and the accident at issue in this case. (Morrissey Decl. ¶ 5.) For this reason, pursuant to its inherent authority, the Court will not consider the medical findings of Dr. Morrissey. *See, e.g., Shao v. Paszynsky,* 2000 WL 307372, at *4 (E.D.N.Y. Jan. 31, 2000) (emphasizing the importance of considering only credible medical evidence in motion for summary judgment), *Yanez v. City of New York,* 29 F.Supp.2d 100, 114 (E.D.N.Y.1998); *Campbell v. Finke,* 187 A.D.2d 780, 780, 589 N.Y.S.2d 382, 382 (3d Dep't 1992).

### 2. Dr. Krosser's medical findings

■ The affirmation of Dr. Barry Krosser submitted by plaintiff, which states that Krosser now believes her injuries were caused by the first accident, will not be considered on this motion for summary judgment because plaintiff failed to disclose the witness pursuant to Fed.R.Civ.P. 26(a). Rule 26(a) requires parties to disclose witnesses with "discoverable information relevant to disputed facts" and expert witnesses. Fed.R.Civ.P. 26(a)(1)(A), (a)(2). She never designated Dr. Krosser as a treating physician nor as an expert witness despite the government's demands to disclose all treating physicians and expert witnesses. In fact, plaintiff and her attorney vehemently denied that Dr. Krosser was treating plaintiff for her lawsuit-related injuries. (Dellicarpini Dep. at 129–30, 140, 146, 158–59). Nevertheless, apparently in an effort to produce some evidence of serious injury, plaintiff asks this Court to consider the affirmation of Dr. Krosser despite baldly violating the rules of civil procedure and acting in bad faith.

Fed.R.Civ.P. 37(c)(1) provides, in relevant part, that "a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." The Advisory Committee Notes to that rule explain that it "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A)," and "prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and

26(e)(1)." Fed.R.Civ.P. 37(c)(1) Advisory Committee Notes (1993 Amendments). The purpose of the rule is to prevent the practice of "sandbagging" an adversary with new evidence. *Johnson Electric North America v. Mabuchi Motor America Corp.,* 77 F.Supp.2d 446, 458 (S.D.N.Y. 1999). Despite the language in the rule that would imply automatic preclusion of the evidence, courts recognize that preclusion is a drastic remedy and therefore exercise discretion and caution. *See Newman v. GHS Osteopathic Inc.,* 60 F.3d 153, 156 (3d Cir.1995); *Johnson Electric,* 77 F.Supp.2d at 458.

Dellicarpini fails to provide any substantial justification, as required by Rule 37, for failing to disclose the existence of Dr. Krosser to the government. She simply contends that her failure is harmless because the government subpoenaed Dr. Krosser's medical records once it learned of him. This argument lacks merit because these records only show Dr. Krosser's medical findings with respect to plaintiff's back injury, which was caused by the second accident. (Supp. Normand Decl. Ex A.) They make no mention of the findings in Dr. Krosser's affirmation regarding the severity of plaintiff's neck injuries and the likely cause of those injuries. If the government had known that Krosser was treating plaintiff for her injuries related to this lawsuit, it would have been able to depose him as it deposed plaintiff's other treating physicians. Therefore, the failure to disclose was not harmless.

Plaintiff also acted in bad faith in not disclosing Dr. Krosser. When asked directly whether Dr. Krosser was treating her for her injuries related to this case, plaintiff testified that he was not. Furthermore, plaintiff's counsel repeatedly instructed his client not to answer any question relating to Krosser's treatment, and even threatened to seek sanctions against defendant for pursuing that line of inquiry. (Dellicarpini Dep. at 124–33, 140, 146, 150–62.) This is the exact type of behavior Rule 37(c)(1) was designed to prevent; the Court will preclude Dr. Krosser's affirmation. *See, e.g., Federal Deposit Ins. Corp. v. Wrapwell Corp.,* 2000 WL 1576889, at *1–3 (S.D.N.Y. Oct. 23, 2000); *Communispond, Inc. v. Kelley,* 1998 WL 473951, at *4–5 (S.D.N.Y. Aug. 11, 1998).

## C. Serious Injury

■ The admissible evidence shows that plaintiff did not suffer a serious injury as required by New York's No–Fault Law. Plaintiff sues the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, under which the government's liability is determined by the law of the state where the accident occurred. *Goodkin v. United States,* 773 F.2d 19, 21 (2d Cir.1985); *Patrello v. United States,* 757 F.Supp. 216, 218 (S.D.N.Y.1991). Because the accident occurred in New York, this action is governed by New York's No–Fault Law, N.Y. Ins. Law §§ 5101–5108 (McKinney 2000).

■ The No–Fault Law provides that plaintiffs can only recover in tort the amount of "basic economic loss" that exceeds $50,000. N.Y. Ins. Law §§ 5102(a), 5104; *Patrello,* 757 F.Supp. at 219. "Basic economic loss" includes medical expenses, lost wages, and other reasonable and necessary expenses. N.Y. Ins. Law § 5102(a). Dellicarpini missed only one half-day of work and incurred approximately $500 in out-of-pocket expenses due to the accident. (Dellicarpini Dep. at 12, 107–08.) Because this does not exceed $50,000, Dellicarpini cannot sue for "basic economic loss."

■ The No–Fault Law also allows tort recovery for non-economic loss if plaintiff sustained a "serious injury," as defined by N.Y. Ins. Law §§ 5102(d), 5104(a). *See also Licari v. Elliott,* 57 N.Y.2d 230, 237, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). Three categories of "serious injury" are potentially relevant to this litigation: (1) "permanent consequential limitation of use of a body organ or member," (2) "significant limitation of use

of a body function or system," and (3) "medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. Law § 5102(d); *see also Lanuto v. Constantine,* 192 A.D.2d 989, 989, 596 N.Y.S.2d 944, 945 (3d Dep't 1993). The court may determine the existence of a serious injury as a matter of law. *Licari,* 57 N.Y.2d at 238, 455 N.Y.S.2d 570, 441 N.E.2d 1088. Once the defendant has made a prima facie showing that the plaintiff has not suffered a serious injury, the burden shifts to the plaintiff to present admissible evidence demonstrating a serious injury. *Shao v. Paszynsky,* 2000 WL 307372, at *3 (E.D.N.Y. Jan, 31, 2000); *Morrone v. McJunkin,* 1998 WL 872419, at *2 (S.D.N.Y. Dec. 15, 1998).

■ In this case, the United States has demonstrated through medical evidence and the admissions of plaintiff herself that plaintiff suffered no serious injury as required by N.Y. Ins. Law § 5102(d). Plaintiff attempts to discredit this evidence by accusing Dr. Saint–Phard of inexperience. Given Dr. Saint Phard's attendance at Princeton University and Temple Medical School and her participation in various internships, residences and fellowships in physical medicine and rehabilitation, (Saint–Phard Dep. at 7–8), the Court dismisses plaintiff's attack on Saint–Phard's qualifications.[2]

1. Permanent consequential limitation of use of a body organ or member

■ To establish a serious injury based on permanent consequential limitation of

use of a body organ or member, plaintiff must produce competent medical evidence that her injuries are permanent. *Yanez,* 29 F.Supp.2d at 114; *Albanese v. Stevens,* 148 A.D.2d 805, 806, 538 N.Y.S.2d 384, 385 (3d Dep't 1989). Subjective complaints of pain do not suffice. *Patrello,* 757 F.Supp. at 222; *Yanez,* 29 F.Supp.2d at 114; *Gabianelli v. Gerardi,* 175 A.D.2d 468, 468, 572 N.Y.S.2d 516, 516 (3d Dep't 1991).

In this case, there is no competent medical evidence that Dellicarpini's injuries are permanent. On the contrary, both of her treating physicians found that her injuries are not permanent. Saint–Phard concluded that plaintiff's accident-related injuries had resolved, and Westrich opined that plaintiff's pain would go away if she would simply take the prescribed medications. (Saint–Phard Dep. at 89–91, Westrich Dep. at 36–40.) Dr. Kenneth Falvo, who examined plaintiff on behalf of her insurance carrier, also concluded that her accident-related injuries had resolved. (Falvo Report.) Therefore, plaintiff suffers no serious injury pursuant to this category of the No–Fault Law.

2. Significant limitation of use of a body function or system

■ To establish a serious injury based on a significant limitation of use of a body function or system, plaintiff must prove that she suffered from "something more than a ... minor, mild or slight limitation of use." *Licari,* 57 N.Y.2d at 236, 455 N.Y.S.2d 570, 441 N.E.2d 1088; *see also Scheer v. Koubek,* 70 N.Y.2d 678, 679, 518 N.Y.S.2d 788, 788, 512 N.E.2d 309 (1987). The significance of the limitation must be supported by credible medical evidence and must be objectively mea-

---

2. Plaintiff also claims that Dr. Westrich told her that her injuries were in fact the result of the accident at issue, (Weinstein Decl. Ex. A), despite his testimony that he could not determine the cause of her complaints of pain. (Westrich Dep. at 39, 43.) His alleged statement to her is hearsay, and therefore not properly considered upon this motion for summary judgment. *See* Fed.R.Civ.P. 56(e). Furthermore, the balance of Dr. Westrich's testimony is relevant only in determining the severity of the injury, not the cause; thus the alleged discrepancy is irrelevant.

sured and quantified. *Lanuto,* 192 A.D.2d at 990, 596 N.Y.S.2d at 945. Subjective complaints of pain, unsupported by credible medical evidence, cannot form the basis of a significant limitation. *Scheer,* 70 N.Y.2d at 679, 518 N.Y.S.2d at 788, 512 N.E.2d 309; *Patrello,* 757 F.Supp. at 222; *Yanez,* 29 F.Supp.2d at 115.

In this case, there is no objective evidence of a significant limitation. All diagnostic tests, including X-rays and MRIs, showed no significant injury. Dellicarpini's treating physicians did find some limitation in her range of motion in her neck; however, these findings were based on her subjective responses rather than objective criteria. (Saint–Phard Dep. at 19–22; Westrich Dep. at 16–17.) In fact, when performing passive range of motion tests, which are based on more objective criteria, both doctors found no limitation in her range of motion. (Saint–Phard Dep. at 21, 113–14; Westrich Dep. at 16–17, 28.) Furthermore, the diagnosis of mild cervical mylagia, which is a soft-tissue neck and upper shoulder strain, suggests that the injury is not significant. *See, e.g., Licari,* 57 N.Y.2d at 239–40, 455 N.Y.S.2d 570, 441 N.E.2d 1088; *Hemmes v. Twedt,* 180 A.D.2d 925, 926, 580 N.Y.S.2d 510, 511 (3d Dep't 1992) (finding that a chronic cervical strain is not a serious injury); *Flater v. Brennan,* 173 A.D.2d 945, 569 N.Y.S.2d 808 (3d Dep't 1991) (finding no significant limitation even when doctor used the word "significant" to describe plaintiff's stiff neck injury). *But see, e.g., Bates v. Peeples,* 171 A.D.2d 635, 636, 566 N.Y.S.2d 659, 660 (2d Dep't 1991). Therefore, plaintiff does not suffer from a serious injury pursuant to this category of the No–Fault Law.

### 3. Prevention of performing usual and customary activities

Plaintiff also cannot show that she was prevented from performing substantially all of the material acts which constitute her usual daily activities for at least 90 out of the 180 days after the accident. *See*

*Licari,* 57 N.Y.2d at 237, 455 N.Y.S.2d 570, 441 N.E.2d 1088. Dellicarpini admits that, except for missing one half day of work on the day of the accident, she was able to perform all of her work and household-related activities. Furthermore, her treating physicians never recommended that she limit any of her activities. Therefore, plaintiff cannot base her claim of serious injury on this category of the No–Fault Law.

### III.   CONCLUSION

Because plaintiff cannot demonstrate that she suffered a serious injury as required by the No–Fault Law, defendant's motion for summary judgment is granted.