**Richard NOSAL, Plaintiff,**

v.

**GRANITE PARK LLC, et al., Defendants.**

**No. 07 Civ. 1977(FM).**

United States District Court,
S.D. New York.

July 2, 2010.

Michael Fahey, Bartels & Feureisen, LLP, White Plains, NY, for Plaintiff.

Kelly Ann McGee, Lewis Brisbois Bisgaard & Smith LLP, New York, NY, for Defendants.

## *ORDER*

FRANK MAAS, United States Magistrate Judge.

In this negligence case, plaintiff Richard Nosal ("Nosal") seeks damages for injuries allegedly suffered when he slipped in the bathtub ("Bathtub") of his room at the Courtyard by Marriott Hotel in midtown Manhattan on September 26, 2006. The defendants are Granite Park, LLC, d/b/a Courtyard by Marriott, and Marriott International, Inc. (together "Marriott"). The trial is scheduled to begin on July 13, 2010.

Each side has filed a motion in limine. Marriott seeks to preclude the testimony of one of Nosal's experts pursuant to Federal Rule of Evidence 702. Pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, Nosal seeks to preclude Marriott from introducing evidence relating to (a) TUB-

GRIP, a product which Marriott allegedly periodically applied to its bathtubs to make them more slip-resistant, and (b) work performed by Porcelain Refinishing Corp. ("PRC"), a vendor that allegedly refinished Marriott's bathtubs with a more permanent slip-resistant surface. In addition, Nosal seeks to preclude Marriott from eliciting testimony at trial about certain of his preexisting medical conditions.

## I. *Discussion*

### A. *Preclusion of Expert Witness*

To be admissible, the testimony of an expert witness must satisfy the requirements of Rule 702 of the Federal Rules of Evidence, which permits a witness qualified by "knowledge, skill, experience, training, or education" to furnish an expert opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R.Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court confirmed the trial court's gatekeeping function under Rule 702. Rather than requiring that a particular methodology have gained general acceptance in the relevant scientific community, as was previously the rule in this Circuit and elsewhere, *see Frye v. United States*, 293 F. 1013 (D.C.Cir.1923); *United States v. McBride*, 786 F.2d 45, 49 (2d Cir. 1986) ("novel scientific evidence must be sufficiently established to have gained general acceptance in the field in which it belongs"), the decision in *Daubert* affords courts greater flexibility. A court nevertheless must determine that the proposed opinion testimony is reliable.

*Daubert* set forth four nonexclusive factors that may be considered in determining reliability: "(1) whether the expert's theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has general acceptance." *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 539–40 (S.D.N.Y.2004) (quoting *Daubert*, 509 U.S. at

592–94, 113 S.Ct. 2786) (internal quotation marks omitted). Subsequently, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court explained that a trial judge is not required to consider these *Daubert* factors in every case in which the admissibility of expert testimony has been challenged. Thus, even after Daubert, treating physicians often are permitted to express their opinions as to the causes of an injury, based on their training and experience, even though none of the *Daubert* factors may support the admission of that evidence. *See Santoro v. Signature Constr., Inc.*, No. 00 Civ. 4595(FM), 2002 WL 31059292, at *4 (S.D.N.Y. Sept. 16, 2002); *accord Figueroa v. Boston Scientific Corp.*, 254 F.Supp.2d 361, 365–66 (S.D.N.Y. 2003). Similarly, it is common in this District for police or other law enforcement officials to give expert testimony about the meaning of code words used in recorded conversations, despite the court's inability to verify through independent sources that the testimony being proffered is accurate. *See, e.g., United States v. Cruz*, 363 F.3d 187, 194 (2d Cir.2004).

Under Rule 702, *Daubert*, and *Kumho Tire*, the Court must make a three-part determination. The Court must first consider whether the proffered expert is qualified to testify on the subject matter; second, whether the expert's methods yield reliable testimony; and third, whether the resulting testimony is relevant. *See Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir.2005); *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003) ("Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit.")

### 1. *Qualification*

■ John J. Hare ("Hare"), an architect and engineer retained by Nosal to inspect the bathroom where the accident occurred, has submitted an expert report concluding that Marriott's failure to maintain a slip-proof surface in the bathtub caused Nosal's fall. (Defs.' Mem. in Supp. of Mot. to Exclude Pl.'s Expert ("Defs.' Mem.") Ex. A). Marriott argues that Hare's report and testimony should be excluded because his "exper-

tise, including his education, training, skill and experience, with respect to bathroom safety issues is nonexistent." (*Id.* at 14).

Hare's curriculum vitae states that he is a registered architect, professional engineer, "H.H.S. building inspector," and president of a construction company. (*Id.* Ex. D at 1). His curriculum vitae further indicates that he has had extensive experience with many types of construction work and structural inspections. (*Id.* Ex. D at 2, 3, 6). His only credential potentially relevant to bathrooms and non-skid surfaces, however, is a certificate reflecting his completion of a seminar regarding "swimming pools, hot tubs, etc.," given by the Division of Codes and Standards of the New Jersey Department of Community Affairs. (*Id.* Ex. D at 35).

In opposition to Marriott's motion, Nosal argues that "Mr. Hare has been responsible for the design, installation and inspection of numerous structures which utilize the very engineering and design principles upon which the design and maintenance of the subject tub is predicated." (Pl.'s Mem. in Opp'n to Defs.' Mot. to Exclude Pl.'s Expert ("Pl.'s Opp'n Mem.") at 8–9). While it is unclear precisely what this means, Marriott does not dispute that Hare is a contractor with 35 years of experience who has worked on residential properties and possesses a New Jersey certificate related to pools and hot tubs.

Courts within the Second Circuit have "liberally construed expert qualification requirements." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* No. 05 Civ. 9016(SAS), 2010 WL 882893, at *2–*4 (S.D.N.Y. March 10, 2010); *see also McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1042–43 (2d Cir.1995) (industrial engineer's testimony that plaintiff was within the "breathing zone" of hot-glue fumes "easily qualifie[d] for admission under *Daubert,*" although he lacked qualifications as to certain technical matters in that field, because the matter was within his general expertise). Judged by this standard, Hare clearly possesses sufficient experience to be qualified as an expert in the field of bathtub surfaces

since he has worked as an architect and engineer on residential projects for many years and has additional training that involves structures similar to bathtubs which might employ non-skid surfaces.

## 2. *Reliability and Relevance*

■ Marriott contends that even if Hare has the requisite training and experience to testify as an expert regarding non-skid surfaces, his examination of the Bathtub did not employ the testing or methodology necessary to satisfy *Daubert* and its progeny. Marriott argues that Hare's proposed testimony consequently is not sufficiently reliable to be admissible.

Hare's report states that he inspected the Bathtub on April 9, 2009, more than two and one half years after Nosal was injured. (Defs.' Mem. Ex. A at 1). Before preparing the report, he also reviewed the deposition testimony of Nosal and Michael Lezamiz ("Lezamiz"), Marriott's Director of Engineering; Marriott's contract with PRC for the refinishing of the Courtyard Marriott bathtubs; certain books and articles concerning slip-resistant surfaces and hotel industry standards; and several photos of the Bathtub taken by Marriott six months after the accident.

Lezamiz evidently testified during his deposition that Marriott had refinished the Bathtub prior to Nosal's injury with a texturized sand application that left "a series of oval circles that is a bath mat." (*Id.* at 3 (citing Lezamiz Dep.)). Hare states in his report that, contrary to Lezamiz's testimony, the process would not have involved the use of porcelain enamel, but rather, an epoxy paint. Hare further notes that he observed no ovals, such as those described by Lezamiz, either in Marriott's photographs or when he inspected the Bathtub.[1]

In *Rupolo v. Oshkosh Truck Corp.,* 2009 WL 6547339 (E.D.N.Y. Oct.27, 2009), Judge Reyes found that expert testimony was "reliable and relevant" in a case involving a fall from a ladder because the expert conducted

---

1. At the time of his site visit, Hare observed a non-slip surface, but reported that it was "an applied non-slip surface that was rectangular in shape and very uniform" and "appeared to be a stick-on sheet applique." (*Id.* at 6).

two inspections of the site, consulted safety guidelines before concluding that the ladder did not have the minimum amount of space necessary for a climber to place his foot safely, measured the traction on the ladder rung both wet and dry, and reconstructed the incident with a climber wearing boots identical to those the plaintiff had been wearing. *Id.* at *6. Here, by comparison, Hare conducted no studies.

Moreover, to the extent that Hare bases his expert report on his physical inspection of the Bathtub, there is nothing "expert" about the conclusion he reached. Indeed, any person running his or her hand over the Bathtub surface presumably could easily have determined whether it had a texturized finish. While it might be beyond the ken of a nonexpert to opine about the adequacy of any slip-resistant surface that was present, Hare found that the Bathtub did not have a texturized finish. Accordingly, there is no basis for the admission of any expert testimony based on Hare's on-site inspection since he made no use of any expertise.

Hare also examined photographs of the Bathtub produced by Marriott, copies of which have been furnished to the Court. In his report, Hare opines that the texturizing material used with epoxy paint is "carbruendum," not sand, as Lezamiz alleged during his deposition.[2] (Defs.' Mem. Ex. A at 3). He further opines that the photographs confirm the absence of a texturized surface because "the ovals should show ... as a gray color." (*Id.*). Neither side has furnished the Court with copies of the photographs which are sufficiently clear for me to be able to draw any conclusions regarding the presence or absence of a texturized surface. More importantly, however, Hare failed to establish any basis for his conclusion that any ovals applied to the Bathtub would have been visible *in photographs* based on their gray color. For example, there is no indication that he photographed other bathtubs that had been resurfaced in the same manner and invariably was able to see evidence of the texturizing in the photographs. In the ab-

sence of any such testing, to the extent that Hare's opinion is based on the absence of ovals in the photographs, it plainly is *ipse dixit* and therefore inadmissible. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Hare's report sets forth two further professional opinions. First Hare indicates that, contrary to Marriott's "Guest Room TUB-GRIP Log Report," his own research discloses that there is no product known as "tub grip." Hare bases this opinion on his "investigation on-line" which suggested that "the only product called 'tub grip' was a device to hold on to that attached to the side of the top edge" of bathtubs. (Defs.' Mem. Ex. A at 3). To the extent that Hare bases his conclusion on internet research, he once again does not rely on any aspect of his construction or engineering expertise. Moreover, as Marriott notes, Hare's conclusion is surely wrong. Indeed, Marriott has produced, albeit belatedly, a photograph of the label from a container of "TUBGRIP" which describes it as a product that "increases the slip resistance of porcelain or enamel surfaces of bathtubs and showers when they are wet." (*See* Decl. of Michael Fahey, Esq., dated May 21, 2010 ("Fahey Decl.") Ex. G).

Additionally, even if Hare's conclusions regarding the Bathtub surface were a proper subject for expert testimony, Hare made his observations almost three years after the accident. There is nothing in Hare's report which permits the inference that the condition of the Bathtub at the time of his inspection was the same as when Nosal allegedly slipped and fell. To the contrary, Hare's conclusion that a different non-slip surface existed at the time of the inspection than the one Lezamiz described suggests that altera-

2. I assume Hare meant Carborundum, the trade name of a silicon carbide compound used as an abrasive. *See* Encyclopedia Britannica, http:// www.britannica.com/EBchecked/topic/1517059/ Carborundum (last visited July 1, 2010).

tions may have been made over the intervening years.

Finally, Hare's report discusses the location of a grab-bar above the Bathtub, concluding that it does not meet the standards of the Americans with Disabilities Act ("ADA"). In his complaint, however, Nosal does not contend that the positioning of the grab-bar either caused or exacerbated his injuries. Accordingly, even if the positioning of the grab-bar was not ADA compliant, that fact is wholly irrelevant.

In sum, although Hare may have the appropriate qualifications, his findings are not sufficiently reliable and relevant to warrant permitting him to testify as trial witness. Marriott's motion to preclude Hare's testimony therefore is granted.

## B. *Preclusion of Defense Evidence*

Nosal seeks to preclude Marriott from introducing at trial certain evidence related to its maintenance of the Bathtub that was not timely produced. Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires that a party, without awaiting a discovery request, furnish the other parties to a suit with "a copy—or description by category and location—of all documents ... and tangible things that the disclosing party has in its possession, custody, or control and may use to support the claims or defenses, unless the use would be solely for impeachment." Fed. R.Civ.P. 26(a)(1)(A)(ii). A party also must timely supplement this disclosure if additional or corrective information becomes available. Fed.R.Civ.P. 26(e)(1)(A); *Alfano v. Nat'l Geographic Channel,* No. CV 06–3511(NG)(JO), 2007 WL 2982757, at *1 (E.D.N.Y. Oct. 5, 2007) (a party is "under an affirmative duty to supplement incomplete or incorrect disclosures").

Under Rule 37(c)(1) of the Federal Rules, if "a party fails to provide information ... required by Rule 26(a) ..., the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." This Rule is designed to prevent the "sandbagging" of an opposing party with new evidence. *Fleming v. Verizon N.Y., Inc.,* No. 03 Civ. 5639(WHP), 2006

WL 2709766, at *7 (S.D.N.Y. Sept. 22, 2006); *Ventra v. United States,* 121 F.Supp.2d 326, 332 (S.D.N.Y.2000); *see also CSC Holdings, Inc. v. Berube,* No. 01–1650(DRH)(MLO), 2004 WL 3541331, at *3 (E.D.N.Y. July 7, 2004) (Rule 37(c)(1) is "designed to avoid ... gamesmanship ... [and] to provide a strong inducement for disclosure of Rule 26(a) material.") (internal quotation marks omitted).

■ Despite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if "the trial court finds that there is no substantial justification and the failure to disclose is not harmless." *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 297 (2d Cir.2006). In deciding whether to exercise its discretion to impose sanctions, a court should consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico,* 440 F.3d 104, 117 (2d Cir.2006) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.,* 118 F.3d 955, 961 (2d Cir.1997)) (brackets in original). Although Rule 37(c)(1) does not require a movant to show bad faith on the part of the offending party to prevail, *Design Strategy,* 469 F.3d at 296, preclusion of a witness' testimony is a harsh sanction, to be imposed with caution. *See, e.g., Martinez v. Port Auth. of N.Y. and N.J.,* No. 01 Civ. 721(PKC), 2005 WL 2143333, at * 14 (S.D.N.Y. Sept. 2, 2005).

### 1. *TUBGRIP*

■ Nosal seeks to exclude any evidence concerning the use of TUBGRIP on Marriott bathtubs, including the Courtyard by Marriott's records of its TUBGRIP applications and a specimen TUBGRIP container and label. (Pl.'s Mem. in Supp. of Pl.'s Mot. in Limine ("Pl.'s Mem.") at 4). Nosal's counsel concedes that he learned about TUBGRIP and Marriott's use of it during Lezamiz's deposition on October 24, 2007. (*Id.* at 3). Although Nosal suggests in his motion that "the TUBGRIP and records" were not pro-

duced, (*id.* at 4), Marriott has supplied the Court with a copy of its a Supplemental Response to Notice for Production of Documents, dated September 19, 2007, which contains the relevant page of the "Guest Room Tub Grip Log Report." (*See* Decl. of Louis F. Eckert, Esq. dated June 7, 2010 ("Eckert Decl."), Ex. C at 4). This was more than two years before Hare issued his report. Notably, in his reply papers, Nosal does not dispute that he received a page of the TUBGRIP application log in 2007. (*See* Defs.' Mem. in Opp'n to Pl.'s Mot. in Limine ("Defs.' Opp'n Mem.") at 5; Eckert Decl. Ex. C at 4).

Much more recently, after discovery closed, Marriott sent Nosal a supplemental Rule 26 disclosure which quoted from the TUBGRIP label and offered to make a TUBGRIP container available for inspection. (*See* Fahey Decl. Ex. G; Defs.' Mem. Ex. B). Marriott contends that it was not required to produce an actual specimen of TUBGRIP during discovery because the "specific bottle" used on the Bathtub prior to the accident was no longer in Marriott's "possession, custody, or control" when this suit was filed. (Defs.' Opp'n Mem. at 3). This contention stretches credulity. If Marriott proposed to use a specimen of TUBGRIP as part of its defense, it had a duty under Rule 26 to produce it during discovery.

Marriott contends that there was no need to produce a specimen of TUBGRIP because it is a commercially-available product referred to on several websites. (*Id.* at 3). Suffice it to say, *none* of the websites upon which Marriott relies contains any information from the label that Marriott seeks to introduce into evidence during the trial of this case. Indeed, the Amazon.com webpage that Marriott cites offers a product, selling for $19.99, which appears intended for household use and which contains no labeling information other than the product's name. *See* amazon.com, http://www.amazon.com/Grip-iT-A-1-Tub/s=home~garden&qid=1278028952&sr=8-1-spell (last visited July 1, 2010).

Turning to the second and third prongs of the *Design Strategy* analysis, precluding Marriott from introducing a sample container of TUBGRIP into evidence will not substantially prejudice its defense since Marriott remains free to establish that it had an ongoing procedure for maintaining a non-slip surface in its bathtubs using a product called TUBGRIP. Marriott also will be able to introduce into evidence the log entry establishing that it applied TUBGRIP to the Bathtub only a few months before Nosal's stay at the Courtyard by Marriott.

Finally, this case is slated for trial later this month and has been pending for more than three years. In light of the advanced age and stage of the case a continuance is not a realistic solution to the prejudice that Nosal would suffer if the Court were to entertain an application to reopen discovery and delay the trial.

### 2. PRC

Nosal also seeks to exclude any records of, or testimony about, PRC, the company Marriott hired to refinish the bathtubs at the Courtyard by Marriott. During discovery, Marriott produced copies of its contract with PRC and the canceled checks reflecting its payments for PRC's services. Thereafter, following the close of discovery, Marriott produced PRC work tickets reflecting the specific rooms where it worked, including the room containing the Bathtub. Nosal argues that Marriott should not be permitted to use these records produced after the close of discovery. (Pl.'s Mem. at 4-5).

There is no suggestion that Marriott controls PRC. Accordingly, to the extent that the work tickets were not within Marriott's possession, custody or control, Marriott had no obligation to produce them pursuant to Rule 26's automatic disclosure requirements. It further is settled law that "a party [upon whom a discovery demand is served] ... need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir.2007). If Nosal's counsel wanted the PCR work tickets at an earlier time, he was free to subpoena them. The fact that Mar-

riott first did so on April 14, 2010, does not mean that it violated Rule 26 and does not entitle Nosal to a preclusion order.

### 3. *Medical Records*

Finally, Nosal seeks an order directing Marriott's counsel not to inquire into a prior shoulder injury or any other injury unrelated to the injuries he claims Marriott caused, which are described as "three broken ribs and sustained painful bulging to the disks in his lumbar spine and herniated disks in his central spine." (Pl.'s Mem. at 11). The Court will hear argument concerning this application (and expect an offer of proof from Marriott's counsel) immediately prior to jury selection.

### III. *Conclusion*

For the foregoing reasons, Marriott's motion to exclude Hare's expert testimony (Docket Nos. 30, 34) is granted; and Nosal's motion to preclude (Docket No. 31) is granted to the extent that Marriott is barred from introducing any evidence concerning the TUBGRIP bottle and label and denied with respect to the PRC work tickets. The Court reserves decision regarding Nosal's application to limit Marriott's questioning about allegedly unrelated medical conditions.

SO ORDERED.